IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SCOTT D. LAWSON and STEVEN LAWSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.:   2:07cv356-MHT |
| SWIFT TRANSPORTATION and FREDRICK S. MARTIN, JR., | ) ) ) | |
| Defendants. | ) | |

───────────────────────────────────────────────

**BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

───────────────────────────────────────────────

COME NOW the Defendants, **Fredrick S. Martin, Jr.**, and **Swift Transportation Co., Inc.**, and in support of their Motion for Partial Summary Judgment, present the following points of fact and law:

## I. INTRODUCTION

The instant action is based upon a motor vehicle accident that occurred on the evening of March 15, 2007, on Highway 84 in Covington County, Alabama, when a vehicle driven by Plaintiff Scott Lawson and also occupied by Plaintiff Steven Lawson collided with a tractor-trailer truck operated by Fredrick S. Martin,

Jr., and owned by Swift Transportation Co., Inc.  Plaintiffs Scott and Steven Lawson (hereinafter "Plaintiffs") originally filed this lawsuit on or about April 27, 2007, and have subsequently amended it three times to cure procedural deficiencies.

In Count I of their Third Amended Complaint (Doc. 19), the Plaintiffs allege that the accident occurred because Mr. Martin negligently and/or wantonly operated his tractor-trailer.  (Third Am. Compl., ¶¶ 12-14, a copy of which is attached hereto as Ex. 1).  Additionally, in Count IV, the Plaintiffs assert that their alleged injuries were caused by some type of "combined and concurring negligence and/or wantonness" on the part of Swift Transportation and Mr. Martin. (Ex. 1, ¶ 25).  According to correspondence from the Plaintiffs' counsel, they will be voluntarily dismissing Counts II and III.

The Defendants' Motion for Partial Summary Judgment only addresses the Plaintiffs' claims of wantonness and does not seek dismissal of their negligence claims.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but "*shall be rendered forthwith* if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn there from in the light most favorable to the non-moving party. Swain v. Hillsborough County Sch. Bd., 146 F.3d 855, 857 (11th Cir. 1998).

The party seeking summary judgment has the initial burden of showing that there is no genuine issue of material fact. Celotex Corp., 477 U.S. at 324. Once the moving party meets its burden, the non-moving party must set forth **specific facts** demonstrating that there is a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). **"A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."** Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc)

(quoting <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995)) (emphasis added).

To avoid an adverse ruling on a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [their] pleadings." Fed. R. Civ. P. 56(e). Nor may the non-moving party defeat a summary judgment motion by simply providing a mere "scintilla" of evidence. <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1321 (11th Cir. 1999). Instead, there must be a genuine factual conflict in the evidence to support a jury question. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir. 1999).

### III.  THE PLAINTIFFS' CONTENTIONS AND CITED EVIDENCE

The Plaintiffs allege that Mr. Martin failed to yield the right-of-way to them. Specifically, the Plaintiffs contend that Mr. Martin caused the subject accident by turning left into the path of their vehicle when he was attempting to make a u-turn across the highway with his tractor-trailer. (Pl. Scott Lawson's Resp. To Defs.' Interrog. 3, a copy of which is attached hereto as Ex. 2; Pl. Steven Lawson's Resp. To Defs.' Interrog. 3, a copy of which is attached hereto as Ex. 3). Plaintiff Scott Lawson contends that he could not avoid colliding with the tractor-trailer. (Ex. 2, Interrog. 3).

Mr. Martin neither saw nor comprehended that the Plaintiffs' vehicle was approaching behind him when he initiated this u-turn. (Def. Fredrick S. Martin, Jr.'s Resp. To Pls.' First Interrog. 26, attached hereto as Ex. 4). He looked in his mirror prior to turning and saw absolutely <u>no</u> cars approaching on the dark highway. (Deposition of Fredrick S. Martin, Jr., p. 69, lines 6-23; p. 70, lines 1-2, a copy of which is attached hereto as Ex. 5). Mr. Martin did not see the Plaintiffs' vehicle until he was half-way through the u-turn with his tractor in the median facing the oncoming lanes of travel:

| | |
|---|---|
| Plaintiffs' counsel: | Okay. When did you first see the vehicle where my clients were? |
| Mr. Martin: | After I had completed the turn and was in the middle of the median up with the nose of the tractor right at the oncoming – right at the – before the oncoming traffic from the other direction. And as I got that turn made, I heard the squealing of the tires, looked out the window and saw that car at that point. |
| Plaintiffs' counsel: | Okay. So your testimony is that you didn't see them until your tractor was in the median? |
| Mr. Martin: | That's correct. |

(Martin Dep. at p. 56, lines 18-23; p. 57, lines 1-8, attached hereto as Ex. 6). According to Plaintiff Scott Lawson, the first thing Mr. Martin asked the Plaintiffs after the accident occurred was where they had come from. (Deposition of Scott Daniel Lawson, p. 72, lines 5-11, a copy of which is attached hereto as Ex. 7).

The investigating officer, Steven McGowin, said in his deposition that he recalled Mr. Martin telling him that he saw the Plaintiffs' car in his mirror before beginning his u-turn (Deposition of Steven Francis McGowin, p. 20, lines 6-11, a copy of which is attached hereto as Ex. 8). However, **Officer McGowin's actual interview of Mr. Martin was recorded using the recording equipment in his police cruiser, and the resultant videotape tells a <u>completely</u> different story.** (Police cruiser videotape, a DVD copy of which is attached hereto as Ex. 9).[1] The audio portion of the videotape reflects the following exchange between Officer McGowin and Mr. Martin:

---

[1] This videotape was subpoenaed by Plaintiffs' counsel (a copy of this subpoena, as well as the cover letter from Plaintiffs' counsel enclosing a DVD copy of the videotape, are attached hereto as Ex. 10), and the fully documented chain of custody for it is outlined in Officer McGowin's deposition. (McGowin Dep. at p. 40, lines 5-23; p. 41, lines 1-23; p. 42, lines 1-9, attached hereto as Ex. 11).

| Ofc. McGowin: | Alright. I want you to tell me again how you think this accident happened. |
|---|---|
| Mr. Martin: | Yes, sir. I was parked back there, back down the road a ways. I had stopped on the side of the road to look at the map. There was nothing coming. I waited a couple of seconds. There was nothing coming, so I pulled out to that lane and then I pulled into this lane. And then, had my signal on, and started to go into that lane and make the turn. . . . (other voices) . . . **There was nothing coming, I mean, and then, all of a sudden, they come over that hill and . . . I heard him skidding, but it was too late to get the truck out of the way, obviously, at that point.** |

(Ex. 9, beginning at 7:33:50) (emphasis added). <u>At no time on the videotape does Mr. Martin tell Officer McGowin that he saw the Plaintiffs' car prior to starting his u-turn.</u>[2] **Importantly, Officer McGowin had <u>not</u> reviewed this videotape at the time of his deposition, and so was simply relying on his memory.** (McGowin Dep. at p. 40, lines 18-19; p. 43, lines 1-4. attached hereto as Ex. 12).

---

[2]The videotape and Officer McGowin's deposition testimony do reflect a question as to whether Mr. Martin mistakenly thought he was in the left-hand lane but was actually in the right-hand lane at the time he began his turn. However, since Mr. Martin did not see the Plaintiffs' car approaching, this evidence would go to negligence and not wantonness.

Mr. Martin, for his part, denied ever having told the officer that he had seen the Plaintiffs' vehicle at any point when he could have avoided the accident, (Martin Dep. at p. 61, lines 4-15; p. 62, lines 18-23; p. 63, lines 1-18, attached hereto as Ex. 13), and this deposition testimony is verified by the videotape. (Ex. 8, beginning at 7:33:50).

As outlined in more detail below, the Defendants argue, for the purposes of Rule 56, that even if Mr. Martin failed to yield the right-of -way to the Plaintiffs, his doing so only amounted to negligence, not wantonness. Additionally, the Defendants argue that there is no evidentiary support for the Plaintiffs' claim of "combined and concurring wantonness." Stated differently, the Defendants point out to the Court that there is an "absence of evidence" to support this claim.

## IV. <u>ARGUMENT</u>

### A. <u>The Plaintiffs Cannot Set Forth Sufficient Evidence That Mr. Martin Wantonly Operated His Vehicle.</u>

The Eleventh Circuit Court of Appeals has commented on the distinction between negligence and wantonness. See <u>Rommell v. Automobile Racing Club of America, Inc.</u>, 964 F.2d 1090 (11th Cir. 1992). The court has outlined that under Alabama law, negligence and wantonness are two separate theories of tort recovery. Wantonness requires some "degree of conscious culpability," whereas

negligence can easily arise from inadvertence.   Rommell, 964 F.2d at 1096.

Specifically, the court has acknowledged that,

> Wantonness is not merely a higher degree of culpability than negligence.   Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability.   **Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury...**"

Rommell, 964 F.2d at 1097 (emphasis added).

In the instant case, even if the Plaintiffs' allegation that Mr. Martin failed to yield the right-of-way when he attempted to make a u-turn is taken in the light most favorable to the Plaintiffs for purposes of Rule 56, the Defendants are still entitled to a judgment as a matter of law on the wanton operation claim.  This is because the Plaintiffs cannot offer sufficient evidence to prove that Mr. Martin operated his tractor-trailer "with knowledge of danger, or with consciousness" that what he was doing would likely cause injury to others.

According to the Plaintiffs, Mr. Martin failed to yield the right-of-way when he turned left into their path as he was trying to make a u-turn.  Pl. Scott Lawson's Resp. To Defs.' Interrog. 3, attached hereto as Ex. 2; Pl. Steven Lawson's Resp. To Defs.' Interrog. 3, attached hereto as Ex. 3.  Even if this is true, the totality of the

evidence in this case shows that, at worst, Mr. Martin's conduct would only amount to negligence – not wantonness.

The case of <u>Cryer v. Werner Enters.</u>, 2007 U.S. Dist. LEXIS 95847 (N.D. Ala. Jan. 23, 2007) is especially instructive.  In this case with facts quite similar to the one at bar, the Northern District found no wantonness as a matter of law and granted the defendants' motion for partial summary judgment.  <u>Cryer,</u> 2007 U.S. Dist. LEXIS 95847.  In <u>Cryer</u>, the defendant driver of a tractor-trailer, who had never been to the area before, inadvertently missed the turn into the business where he was supposed to park his truck for the night.  <u>Id</u>. at *3.  Once he became aware of this, he began looking for a place to turn around.  <u>Id.</u>  Although he refused to characterize it as such, he ended up deciding to make a u-turn across the three-lane road when there was enough of a lull in the oncoming traffic.  <u>Id.</u> at *6.

At the same time, the <u>Cryer</u> plaintiffs were waiting in a vehicle up the road to pull out onto the same road and proceed toward the tractor-trailer.  <u>Id.</u>  When a lull in the traffic came, the plaintiffs pulled out onto the road.  Id.  However, the defendant truck driver, not realizing that the plaintiffs had entered the road and were approaching him, began his planned u-turn.  2007 U.S. Dist. LEXIS 95847 at *6-7.  "It was not until the cab of his tractor-trailer reached the median, and he looked back to his left, that [the defendant driver] saw [the [plaintiffs'] vehicle for

the first time." Id. at *8.  The driver of the plaintiffs' vehicle testified that he had seen the tractor-trailer on the shoulder when he was waiting to enter the roadway, "but the next time he made eye-contact with the rig was when it pulled out in front of him."  Id.  Even though the plaintiff driver applied his vehicle's brakes in earnest, he could not avoid a collision.  Id.

After reviewing the concept of wantonness itself and several pivotal Alabama cases dealing with claims of wantonness in the context of motor vehicle accidents, the Cryer court employed the two-part analysis set forth by this honorable Court in Monroe v. Brown, 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004) ("To survive summary judgment, then, Mr. Monroe must establish a genuine issue of fact as to whether Brown (1) acted consciously when he attempted to drive through the intersection before the light changed from yellow to red; and (2) was conscious, based on existing conditions, that injury was a likely or probably [sic] result of his actions.").  2007 U.S. Dist. LEXIS 95847 at *15.

The Cryer court found that the first element of the wantonness analysis – that the defendant truck driver consciously attempted to perform a u-turn across several lanes of traffic – was not in dispute.  Id. at *15-16.  However, the court held that the evidence did not support the second required showing – that the defendant driver "'was conscious, based on existing conditions, that injury was a

likely or probabl[e] result of his actions.'" Id. at *16 (citing Monroe, 307 F. Supp. 2d at 1271). The court in Cryer explained that no reasonable juror could find, based on the evidence presented, that the defendant driver knew that his actions would likely cause injury to a third-party, especially in light of the fact that the plaintiffs there actually admitted that the defendant driver had not seen them prior to pulling out toward the median. Id. at *16-17, *18.

In the instant case, as in Cryer, no reasonable juror could look at the evidence at bar and determine that Mr. Martin knew his turning would likely or probably cause injury. Although there is no admission by the Plaintiffs in this case as there was in Cryer, the unrefuted evidence shows that Mr. Martin did not see the Plaintiffs' vehicle prior to beginning his u-turn so as to satisfy the second prong of the Monroe analysis.

Like the defendant driver in Cryer, Mr. Martin wished to make a u-turn with his tractor-trailer, looked for oncoming traffic that would make doing so dangerous, saw none, and then attempted to make that u-turn. See Ex. 4, No. 26; Ex. 5, pp. 56-57; Ex. 6, p. 72; and Ex. 8, beginning at 7:33:50. Here, exactly as in Cryer, it was not until the cab of his tractor-trailer reached the median, and he looked back to his left, that Mr. Martin saw the Plaintiffs' vehicle for the first time. Ex. 5, pp. 56-57. As outlined above, the videotape from Officer McGowin's police

cruiser <u>directly refutes</u> and proves erroneous the only testimony in this case that Mr. Martin may have seen the Plaintiffs car and decided to turn in front of them. (Ex. 8, beginning at 7:33:50). Therefore, this evidence should be disregarded by the Court.

Officer McGowin's untrustworthy testimony made without reviewing his videotape aside, the record before the Court shows that Mr. Martin neither saw nor comprehended that the Plaintiffs' vehicle was approaching behind him when he initiated this u-turn. <u>See</u> Ex. 4, No. 26; Ex. 5, pp. 56-57; Ex. 6, p. 72; and Ex. 8, beginning at 7:33:50. Without that testimony, **Plaintiffs simply cannot show that there is sufficient evidence for a reasonable jury to return a verdict in its favor, as they are required to do in order to avoid summary judgment.** <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1023 (11th Cir. 2000).

The case of <u>Haynes v. Sarsfield</u>, 2007 U.S. Dist. LEXIS 61869 (M.D. Ala. 2007), also demonstrates that the Plaintiffs' wanton operation claim should not go to the jury. The <u>Haynes</u> plaintiff brought claims of negligence and wantonness against the driver of a tractor-trailer after his vehicle collided with hers. <u>Id.</u> at *1, *4. Just before that accident, the plaintiff had been driving north in the right lane of U.S. Highway 231. As he approached a parking lot to his right, the defendant truck driver attempted to turn right out of that parking lot onto U.S. 231 to also

head north.  Id. at *5.  Although the defendant said that she looked to her left before making the turn and did not see the plaintiff, she also admitted to averting her focus during the turn to a pothole in the road.  Id.  The plaintiff pressed hard on the brakes and swerved to the left, but he was unable to avoid hitting the tractor-trailer.  Id.

On those facts, the defendant in Haynes moved for partial summary judgment on the wantonness count.  Employing the Monroe analysis (stating that the plaintiff had to establish a genuine issue of fact as to whether the defendant (1) acted consciously in making her turn without spotting the plaintiff, and (2) was conscious, based on existing conditions, that injury was a likely or probable result of her actions), the court granted the motion.  Haynes, 2007 U.S. Dist. LEXIS at *9.  The court concluded that although a question of fact remained as to whether the defendant was negligent in failing to keep her eyes focused in the plaintiff's direction, "'there [was] a total lack of evidence from which the jury could reasonably infer wantonness.'" (citing McDougle v. Shaddrix, 534 So. 2d 228, 231 (Ala. 1988)).  Id. at *9.

Again, in the present case, as to part (2) of the analysis, **the only evidence that Mr. Martin might have been conscious that injury would likely or probably result from his turning left – Officer McGowin's testimony that Mr.**

**Martin told him he saw the Plaintiffs' car before he began his turn – is <u>directly</u> refuted and proved erroneous by the audio of the officer's actual interview of Mr. Martin on the videotape from the officer's police cruiser.** Ex. 8, beginning at 7:33:50 (with voice of Mr. Martin telling the officer he saw nothing coming before he attempted his u-turn).

Thus, even if Mr. Martin did fail to yield the right-of-way while making his u-turn, his conduct equated at worst to negligence – not wantonness. As a result, summary judgment is due to be entered on the Plaintiffs' wanton operation claim.

**B.     <u>The Plaintiffs Cannot Set Forth Specific Evidence Of Any "Combined And Concurring Wantonness" So As To Avoid Summary Judgment.</u>**

Quite simply, the record holds absolutely no evidence of "combined and concurring wantonness" on the part of the Defendants. The Plaintiffs cannot point to specific facts demonstrating that there is a genuine issue of fact for trial on this wantonness claim. Therefore, summary judgment should issue. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

## V.  CONCLUSION

The Plaintiffs' claim of wanton operation should fail as a matter of law because there is not sufficient evidence to show that Mr. Martin acted in a manner that he knew would likely cause injury to others. The <u>only</u> thing to which they can

point is testimony based on the faulty memory of the investigating officer –
testimony which is shown to be in error by the videotape of his actual interview of
Mr. Martin at the scene of the subject accident.  Since this refuted evidence is
insufficient, the Plaintiffs cannot meet their burden.

Likewise, the Plaintiffs cannot show the required substantial evidence of any
alleged "combined and concurring wantonness" on the part of Swift Transportation
and Mr. Martin.  Therefore, summary judgment is appropriate on the Plaintiffs'
wantonness claims.

s/ Lea Richmond, IV
Lea Richmond, IV (ASB-8479-l74r)
**ATTORNEY FOR DEFENDANTS**

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone:   (205) 822-2006
Facsimile:    (205) 822-2057

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of February, 2008, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

R. Matt Glover, Esq.
**PRINCE GLOVER LAW**
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406

Stacy Bryan Brooks, Esq.
**JONES & JONES, P.C.**
530 East Three Notch Street
Andalusia, Alabama 36520

<u>s/ Lea Richmond, IV</u>
Of Counsel

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **SCOTT D. LAWSON and** | § | |
| **STEVEN LAWSON,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **VS** | § | **CV 2:07cv356-MHT** |
| | § | |
| **SWIFT TRANSPORTATION** | § | |
| **CO., INC. and** | § | **JURY DEMAND** |
| **FREDRICK S. MARTIN, JR.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

### THIRD AMENDED COMPLAINT

**COME NOW** the Plaintiffs, by and through their counsel of record, and file this Third Amended Complaint heretofore previously filed by correctly naming the Defendant Swift Transportation Co., Inc. The Complaint, as amended, is as follows:

### STATEMENT OF THE PARTIES

1. The Plaintiff, Scott D. Lawson, is a resident citizen of Covington County, Alabama, and is over the legal age of nineteen (19) years.

2. The Plaintiff, Steven Lawson, is a resident citizen of Covington County, Alabama, and is over the legal age of nineteen (19) years.

3. The Defendant, Fredrick S. Martin, Jr., is a resident citizen of Tennessee and is over the legal age of nineteen (19) years.

EXHIBIT I

4.      The Defendant, Swift Transportation Co., Inc., (hereinafter referred to

as "Swift Transportation") is a foreign corporation with its state of

incorporation, corporate headquarters and principal place of business in

Arizona.  Swift Transportation Co., Inc. does business in Covington County,

Alabama.

## STATEMENT OF THE CASE

5.      On or about March 15, 2007, Plaintiff Scott Lawson and Plaintiff

Steven Lawson were traveling eastbound on Highway 84 in Covington

County, Alabama.

6.      A tractor-trailer driven by Defendant Fredrick S. Martin, Jr. collided

with the vehicle driven by Plaintiff Scott D. Lawson and occupied by

Plaintiff Steven Lawson. As a result of the impact, Plaintiffs were caused to

suffer.

## JURISDICTIONAL BASIS

7.      This court has jurisdiction over this matter based upon 28

U.S.C. § 1332, in that Defendants are liable to Plaintiffs in an amount in

excess of Seventy Five Thousand ($75,000), exclusive of interest and cost.

8.      Venue is proper in this court because the Plaintiffs are resident

citizens in this District (28 U.S.C. §1391(b)(1)). Venue is proper in this

district, also pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## COUNT I

### (NEGLIGENCE/WANTONNESS)

9.     Plaintiffs hereby incorporate all the preceding allegations as if specifically set forth herein.

10.     On or about March 15, 2007, Defendant Fredrick S. Martin, Jr. was an agent, servant and/or employee of Defendant Swift Transportation.

11.     On or about March 15, 2007, Defendant Fredrick S. Martin, Jr. was acting within the line and scope of his authority for Defendant Swift Transportation.

12.     On or about March 15, 2007, Defendant Fredrick S. Martin, Jr. negligently and wantonly allowed the tractor-trailer owned by Defendant Swift Transportation to collide with the vehicle driven by Plaintiff Scott D. Lawson and occupied by Plaintiff Steven Lawson.

13.     On or about March 15, 2007, Defendant Fredrick S. Martin, Jr. negligently and wantonly operated the tractor-trailer.

14.     As a direct and proximate result of Defendant Fredrick S. Martin, Jr.'s negligent and wanton conduct, Plaintiffs were caused to suffer.

15.    At the aforesaid time and place, Defendant Martin was an agent,

servant and/or employee of the Defendant, Swift Transportation, and was

acting within the line and scope of his agency, service and/or employment

for the Defendant Swift Transportation, so that Defendant Swift

Transportation is vicariously liable for the said negligence and wantonness

of Defendant Fredrick S. Martin, Jr.

16.    At the time of the subject incident, Defendant Swift Transportation

derived a benefit from Defendant Fredrick S. Martin, Jr.

**WHEREFORE, THESE PREMISES CONSIDERED**, Plaintiffs

demand judgment against the Defendants, jointly and severally, for punitive

damages, in an amount to be determined by a struck jury.

## COUNT II

### (NEGLIGENT/WANTON HIRING, TRAINING, RETENTION, AND SUPERVISION)

17.    Plaintiffs hereby incorporate all the preceding allegations as if

specifically set forth herein.

18.    Defendant Swift Transportation negligently and wantonly employed,

hired, supervised, monitored, trained, investigated, and/or retained as an

agent, servant or employee, the Defendant, Fredrick S. Martin, Jr.

19.    As a direct and proximate result of Defendant Swift Transportation's

negligent and wanton hiring, training, retaining, and supervising Defendant

Fredrick S. Martin, Jr., Plaintiffs were caused to suffer.

**WHEREFORE, THESE PREMISES CONSIDERED**, Plaintiffs

demand judgment against the Defendants, jointly and severally, for punitive

damages, in an amount to be determined by a struck jury.

## COUNT III

### (NEGLIGENT/WANTON ENTRUSTMENT)

20.    Plaintiff hereby incorporates all the preceding allegations as if

specifically set forth herein.

21.    On and about the 15th day of March, 2007, Defendant Swift

Transportation was the owner and/or had custody and/or control of the

vehicle being operated by the Defendant, Fredrick S. Martin, Jr., when the

collision made the subject of this case occurred.  The Defendant, Swift

Transportation negligently and wantonly entrusted the said vehicle to the

Defendant, Fredrick S. Martin, Jr.  Further, plaintiffs aver that the

Defendant, Fredrick S. Martin, Jr., was, at the time the vehicle was entrusted

to him, incompetent to operate the vehicle.

22.    Defendant Swift Transportation knew or by the exercise of reasonable care, should have known that the Defendant, Fredrick S. Martin, Jr., was incompetent to operate a vehicle.

23.    The Defendant's negligent and wanton entrustment combined and concurred with the wantonness of Fredrick S. Martin, Jr., and as a proximate result of the same, Plaintiffs were caused to suffer.

**WHEREFORE, THESE PREMISES CONSIDERED**, Plaintiffs demand judgment against the Defendants, jointly and severally, for punitive damages, in an amount to be determined by a struck jury.

## COUNT IV

### (COMBINED AND CONCURRING NEGLIGENCE AND WANTONNESS)

24.    Plaintiffs hereby incorporate all the preceding allegations as if specifically set forth herein.

25.    As a direct and proximate result of Defendants' combined and concurring negligence and/or wantonness, the Plaintiffs were caused to suffer.

**WHEREFORE, THESE PREMISES CONSIDERED**, Plaintiffs demand judgment against the Defendants, jointly and severally, for punitive damages, in an amount to be determined by a struck jury.

## JURY DEMAND

Plaintiffs demand a jury on all factual issues contained in this complaint.


Respectfully submitted,

s/R. Matt Glover (ASB-7828-A43G)
**Prince Glover Law**
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
(205) 345-1234
(205) 752-6313 facsimile
mglover@princelaw.net


s/Stacy Bryan Brooks(ASB-9087-C66B)
**Jones & Jones, P.C.**
530 East Three Notch Street
Andalusia, Alabama  36420
(334) 222-3161
(334) 222-3163 facsimile
joneslaw@andycable.com


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Done this the 14th day of August, 2007.

s/R. Matt Glover
Of Counsel

Lea Richmond, IV, Esquire

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

SCOTT D. LAWSON and          )
STEVEN LAWSON,               )
                             )
            Plaintiffs,      )
                             )
v.                           )      Case No.:    2:07cv356-MHT
                             )
SWIFT TRANSPORTATION and     )
FREDRICK S. MARTIN, JR.,     )
                             )
            Defendants.      )

PLAINTIFF SCOTT LAWSON'S RESPONSES TO DEFENDANTS'
INTERROGATORIES

COMES NOW the Plaintiff, Scott Lawson, and hereby responds to Defendants, Fredrick

S. Martin, Jr., and Swift Transportation Co., Inc.'s, Interrogatories:

INTERROGATORIES

1.      Identify yourself, giving your name, address, date of birth, social security number,
and current place of employment.
**RESPONSE:  Scott D. Lawson, 19140 Mims Lane, Andalusia, Alabama 36420; 6/26/75;
\*\*\*-\*\*-1395; Jordan Electric.**

2.      Identify each and every communication or transaction you have had with any
Defendant or employee, representative, and/or agent of any Defendant, and identify each
employee, representative, and/or agent of any Defendant with whom you have had each such
communication or transaction, and for each communication or transaction state the date when the
communication or transaction took place, as well as the substance of the communication or
transaction.
**RESPONSE:  I have had no communications that I know of with any of the Defendants,
other than Mr. Martin asking me at the scene where I came from and if I was okay.**

3.      Identify and describe every fact, statement, and document upon which you rely to
support your contention in the Complaint that Defendant Fredrick S. Martin, Jr., negligently
and/or wantonly caused the subject accident.

Page 1 of 8

EXHIBIT 2

**RESPONSE: Plaintiff is current investigating all aspects of the subject wreck. As stated in Plaintiffs' Complaint, Defendant Fredrick S. Martin, Jr., caused or allowed the vehicle he was operating to collide with the vehicle occupied by the Plaintiff. Defendant Fredrick S. Martin, Jr. failed to yield the right of way to the Plaintiffs when he attempted to make a u-turn across the highway. The Swift Transportation tractor-trailer driven by Defendant Fredrick S. Martin, Jr., turned in the path of the Plaintiffs' vehicle, causing a collision. As discovery is ongoing, Plaintiff reserves the right to supplement this response.**

4.    State fully the purpose of the trip that you were making at the time of the alleged accident, including in your answer the place from which you had left, the place you made any stops, and your destination.

**RESPONSE: I left from my mother's house to go to Church's Chicken and back. My brother Steven Lawson was in the car with me.**

5.    If you saw any of the other vehicles involved in the accident prior to the collision, then state specifically the location of each such vehicle when you first observed the same with reference to the point of the collision and whether said other vehicle(s) changed its course of travel at any time from the moment you first observed the said other vehicle(s) until the collision occurred and, if so, then describe fully and in detail what change said other vehicle(s) made in the course of its travel.

**RESPONSE: My brother and I saw the tractor-trailer sitting half in the road and half on the shoulder. It didn't have any safety reflectors or anything and it was sitting still. I was traveling in the right lane and when I noticed that the truck was sitting still in the dark, I put on my blinker and got over into the left lane. When we were just about to pass the truck, it pulled out in front of us, taking up the entire two lanes of highway, and we had nowhere to go except under the truck.**

6.    If the vehicle occupied by you made any change in the course of its travel from the moment you first observed any other vehicles involved in the collision, describe fully such change in the course of travel of the vehicle occupied by you, including in your answer your best judgment of distance in number of feet the vehicle occupied by you traveled from the moment you first observed said other vehicle until the collision occurred.

**RESPONSE: Upon my recollection, I was traveling in the right lane. When I noticed the truck sitting still half in the right lane and half on the shoulder of the road, I put on my blinker and changed lanes into the left lane.**

7.    Please identify all operators, and the occupants of any of the vehicles involved in the subject accident whose identities are known by you (include last known address and telephone number). For each such driver or owner of those vehicles, please state whether you believe or contend that they in any way contributed to your injuries or damages in this case. If so, please state why. If not, please also state why.

**RESPONSE: My brother, Steven Lawson, 21123 Loop Road, Andalusia, Alabama 36420 was a passenger in my vehicle. I do not believe or contend that he in any way contributed to my injuries.**

8. Describe each and every skid mark, tire mark, or gouge mark that you contend any of the vehicles involved in the subject accident placed at or near the scene.

**RESPONSE: Currently, Plaintiff is not aware of any, but Plaintiff is in the process of investigating all aspects of the subject wreck. In addition, discovery is ongoing. Therefore, Plaintiff will supplement this response.**

9. State your best judgment of the speed in miles per hour of the vehicle occupied by you during the last two hundred (200) feet of travel prior to impact.

**RESPONSE: I would estimate 40-43 mph but that is just my best judgment.**

10. State your best judgment of the speed in miles per hour of the vehicle operated by Fredrick S. Martin, Jr., at the time of the subject accident.

**RESPONSE: I have no idea. As discovery is ongoing, Plaintiff will supplement this response as more information is learned.**

11. If the operator of any of the other vehicles involved in the subject accident made any statements in your presence, state when, where, and what was said by the operator of the other vehicle(s).

**RESPONSE: The driver asked if I was okay and asked where I came from.**

12. If any witnesses to the subject accident made any statements to you, or in your presence either at the scene or afterwards, state when, where, and what was said by such witnesses. Please also list the last known address and telephone number of all such witnesses.

**RESPONSE: None.**

13. State whether you had been drinking any alcoholic beverages, used any drugs, or took any medication within the twenty-four (24) hours preceding the subject accident.

**RESPONSE: No.**

14. State the names and addresses of all doctors, hospitals, or other medical providers who examined or treated you for any injuries you claim to have sustained in the accident made the subject of this lawsuit. Please also provide a calculation of such expenses incurred for treatment by those providers listed.

**RESPONSE: Please see produced medical records and expenses for a full description. As discovery is ongoing, Plaintiff reserves the right to supplement this response. At this time, Plaintiff has been treated at Andalusia Hospital, Post Office Box 760, Andalusia, Alabama 36420 and Dr. Roger Boyington, 135 Medical Park Drive, Suite 1A, Andalusia, Alabama 36420. At this time, Plaintiff Scott Lawson's medical expenses total $2,254.78.**

15. Please state whether you have received any payment or settlement from any other party or on behalf of any other party involved in the subject accident. If you have received such payment or settlement, please identify the source, amount and date of payment.

**RESPONSE:  The owner of the vehicle, Melissa Marrow, received a settlement for the property damage in the amount of $3,550.69.**

16.    If you have every had injuries in the same areas of your body as you contend were injured in this accident, then state the names and addresses of all doctors, hospitals, or other medical provides who have examined or treated you for such injuries.

**RESPONSE: Several years ago, sometime around 1998-2000, my back bothered me while I was working at Shaw Industries, bending and standing for 12 hours a day.  However, my back had not bothered me since that time.  After this wreck, my back has bothered me.  I believe Dr. Boyington would have all of this information.**

17.    If any insurance company or any person, firm, or corporation paid all or any portion of any expense for medicine, physicians, dentists, nurses, hospitals, or other related care or treatment which you received as a result of the injuries allegedly suffered by you in the accident made the basis of this lawsuit, state the name of the person, firm, or corporation paying such item of expense, which of the items of expense were so paid, and the total amount of the expenses that were paid.

**RESPONSE:  Not that I know of.**

18.    If you have ever made claim or filed suit against any person, firm, or corporation on account of personal injuries sustained by you prior or subsequent to the date of the accident made the basis of this suit, state when, where (including venue and style), and against whom you made said claim or filed said suit.

**RESPONSE: None.**

19.    Have you ever applied for Social Security Disability benefits?  If so, please state:

　　　(a)    the date of each such application;

　　　(b)    the location (city) of application;

　　　(c)    the status of the application; and

　　　(d)    identify any attorney(s) representing you in that matter.

**RESPONSE: No.**

20.    List all damages you claim to have incurred as a result of the allegations in your Complaint and state why you claim the damage occurred, the description of the nature and extent of the damage, the monetary cost of the damage, and any efforts taken to repair, remedy, or mitigate the claimed damage.

**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad and vague. Without waiving said objection, see produced medical records and expenses.  Plaintiff claims damages for medical bills, lost wages, out of pocket expenses, permanent injuries, mental anguish, and pain and suffering, in an amount to be determined.  As discovery is**

ongoing, Plaintiff reserves the right to supplement this response. Plaintiff is in the process of gathering out-of-pocket expenses and lost wages.

21.     Identify each and every person whom you believe has discoverable knowledge of the claims made the basis of this suit, including in your answer each such person(s)' last known address and telephone number.

**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad and vague. Without waiving said objection, please see Plaintiffs' Initial Disclosures, previously filed in said litigation. See also the medical records for individuals who may have discoverable information.**

22.     Identify each person, save counsel, to whom you have spoken about this case, and state when the communication took place and the substance of the communication.

**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad and vague. I have spoken to my brother Steven Lawson about the case. As discovery is ongoing, Plaintiff reserves the right to supplement this response.**

23.     If you have ever been arrested, indicted, plead guilty, or convicted of a criminal offense, please provide the state, county and date of the arrest, indictment plea or conviction and state what the arrest, indictment or conviction was for.

**RESPONSE: No.**

24.     Have you ever filed bankruptcy? If so, please state the name of the court the bankruptcy was filed in, the case number, the type of bankruptcy filed, the name of the trustee in bankruptcy, the name of the attorney representing you in bankruptcy, and the disposition of the case.

**RESPONSE: No.**

25.     Identify each person whom you expect to use as an expert witness in connection with the trial of this case, and as to each individual also state and identify the following information:

(a) the subject upon which the individual is expected to testify and the opinions and conclusions that the individual is expected to provide at trial;

(b) the facts upon which the individual's opinion and conclusions are based;

(c) summary of the grounds for each of the individual's opinions or conclusions;

(d) each school attended, the dates of attendance, the date of graduation, and the degrees received;

(e) each employer including the dates of employment, job titles held, and reasons for leaving that employment;

(f) each honorary society, professional society and/or professional organization to which the individual belongs or has belonged, and any offices in those organizations or societies which the individuals has held or holds and the dates each office was held;

(g) each article or publication that the individual has authored or to which the individual has contributed;

(h) each judicial or administrative proceeding which the individual has testified in the last five (5) years or is currently expected to testify;

(i) each person with whom the individual has communicated in connection with the case and the substance of the communication;

(j) all material including without limitation, articles, manuals, treatises, books, tables, charts, statistical analysis, calculations, notes and published materials of any nature that the individual reviewed in connection with this proceeding or which the individual may utilize at the trial; and,

(k) each document created by the individual in connection with this proceeding.

**RESPONSE: Plaintiff will provide such information in accordance with this Court's scheduling order.**

26.     Have you been informed that your answers to these interrogatories are given under oath and may constitute a part of the evidence to be presented at trial?

**RESPONSE: Yes.**

27.     List the name and address of every employer which you have had for the last ten years.

**RESPONSE: Jordan Electric, 122 Academy Drive, Andalusia, Alabama 36421; and Shaw Industries, 200 Waits Drive, Andalusia, Alabama 36421.**

28.     List the name and address of every health care provider who or which you have consulted in the last ten years.

**RESPONSE: See response to #14.  As discovery is ongoing, Plaintiff reserves the right to supplement this response.**

29.     Please identify each and every source of knowledge, consisting of documents, testimony or otherwise, upon which you rely to support your contention that Swift Transportation Company, Inc., negligently and/or wantonly hired, trained, and supervised Fredrick S. Martin, Jr.

**RESPONSE:  Plaintiff objects to this request on the basis that it is overly broad, vague and unduly burdensome, as well as it requests information protected by the work product doctrine.  Without waiving said objection, Plaintiff is currently investigating all aspects of**

the subject wreck. As discovery is ongoing, Plaintiff will supplement this response as information is learned.

30.    Please identify each and every source of knowledge including, but not limited to, documents, statements, or other forms of tangible evidence upon which you rely to entrusted a vehicle to Fredrick S. Martin, Jr. in the Complaint.

**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad, vague and unduly burdensome, as well as it requests information protected by the work product doctrine. Without waiving said objection, Plaintiff is currently investigating all aspects of the subject wreck. As discovery is ongoing, Plaintiff will supplement this response as information is learned.**

31.    Please state the name, address, and telephone number of each individual from whom you, or someone acting on your behalf, has taken a written or recorded statement.

**RESPONSE: Plaintiff objects to this request on the basis that is requests information protected by the work product doctrine.**

32.    Please state the name, address, and telephone umber of each person you intend to call as a witness at the trial of this cause.

**RESPONSE:    Plaintiff will provide such information in accordance with this Court's scheduling order.**

Scott Lawson

R. Matt Glover, Esquire
**PRINCE GLOVER LAW**
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
(205) 345-1234

Stacy Bryan Brooks, Esquire
**JONES & JONES, P.C.**
530 East Three Notch Street
Andalusia, Alabama 36520
(334) 222-3161

### CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing upon the following counsel of record by placing same in U.S. mail, addressed as follows and postage prepaid, on this the _20th_ day of _September_ 2007.

Lea Richmond, IV, Esquire

_____
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

SCOTT D. LAWSON and            )
STEVEN LAWSON,                 )
                               )
            Plaintiffs,        )
                               )
v.                             )      Case No.:    2:07cv356-MHT
                               )
SWIFT TRANSPORTATION and       )
FREDRICK S. MARTIN, JR.,       )
                               )
            Defendants.        )

PLAINTIFF STEVEN LAWSON'S RESPONSES TO DEFENDANTS'
INTERROGATORIES

COMES NOW the Plaintiff, Steven Lawson, and hereby responds to Defendants, Fredrick

S. Martin, Jr., and Swift Transportation Co., Inc.'s, Interrogatories:

INTERROGATORIES

1.     Identify yourself, giving your name, address, date of birth, social security number,
and current place of employment.
**RESPONSE:  Steven Lawson, 21123 Loop Road, Andalusia, Alabama 36420; 6/15/81; ***-
**-1225; Neal Roofing.**

2.     Identify each and every communication or transaction you have had with any
Defendant or employee, representative, and/or agent of any Defendant, and identify each
employee, representative, and/or agent of any Defendant with whom you have had each such
communication or transaction, and for each communication or transaction state the date when the
communication or transaction took place, as well as the substance of the communication or
transaction.
**RESPONSE:  I have had no communications that I know of with any of the Defendants.**

3.     Identify and describe every fact, statement, and document upon which you rely to
support your contention in the Complaint that Defendant Fredrick S. Martin, Jr., negligently
and/or wantonly caused the subject accident.
**RESPONSE:  Plaintiff is current investigating all aspects of the subject wreck.  As stated in
Plaintiffs' Complaint, Defendant Fredrick S. Martin, Jr., caused or allowed the vehicle he
was operating to collide with the vehicle occupied by the Plaintiff.   Defendant Fredrick S.
Martin, Jr. failed to yield the right of way to the Plaintiffs when he attempted to make a u-**

Page 1 of 8

EXHIBIT 3

turn across the highway.  The Swift Transportation tractor-trailer driven by Defendant Fredrick S. Martin, Jr., turned in the path of the Plaintiffs' vehicle, causing a collision.  As discovery is ongoing, Plaintiff reserves the right to supplement this response.

4.    State fully the purpose of the trip that you were making at the time of the alleged accident, including in your answer the place from which you had left, the place you made any stops, and your destination.

RESPONSE:  I was riding with my brother from my mother's house to Church's Chicken and back.

5.    If you saw any of the other vehicles involved in the accident prior to the collision, then state specifically the location of each such vehicle when you first observed the same with reference to the point of the collision and whether said other vehicle(s) changed its course of travel at any time from the moment you first observed the said other vehicle(s) until the collision occurred and, if so, then describe fully and in detail what change said other vehicle(s) made in the course of its travel.

RESPONSE:  My brother and I saw the tractor-trailer sitting half in the road and half on the shoulder.  It didn't have any safety reflectors or anything and it was sitting still.  Our vehicle was traveling in the right lane and when Scott saw the truck sitting still in the dark, he put on his blinker and got over into the left lane.  When he was just about to pass the truck, it pulled out in front of us, taking up the entire two lanes of highway, and we had nowhere to go except under the truck.

6.    If the vehicle occupied by you made any change in the course of its travel from the moment you first observed any other vehicles involved in the collision, describe fully such change in the course of travel of the vehicle occupied by you, including in your answer your best judgment of distance in number of feet the vehicle occupied by you traveled from the moment you first observed said other vehicle until the collision occurred.

RESPONSE:  See response to #5.  My brother changed lanes when he realized the tractor-trailer was sitting still, halfway on the road and halfway on the shoulder of the road.  I remember the tractor-trailer did not have any safety indicators, it was just sitting still.

7.    Please identify all operators, and the occupants of any of the vehicles involved in the subject accident whose identities are known by you (include last known address and telephone number).  For each such driver or owner of those vehicles, please state whether you believe or contend that they in any way contributed to your injuries or damages in this case.  If so, please state why.  If not, please also state why.

RESPONSE:  My brother, Scott Lawson, 19140 Mims Lane, Andalusia, Alabama 36420.  I do not believe or contend that he in any way contributed to my injuries.

8.    Describe each and every skid mark, tire mark, or gouge mark that you contend any of the vehicles involved in the subject accident placed at or near the scene.

**RESPONSE: Currently, Plaintiff is not aware of any, but Plaintiff is in the process of investigating all aspects of the subject wreck. In addition, discovery is ongoing. Therefore, Plaintiff will supplement this response.**

9.    State your best judgment of the speed in miles per hour of the vehicle occupied by you during the last two hundred (200) feet of travel prior to impact.
**RESPONSE: I have no idea.**

10.    State your best judgment of the speed in miles per hour of the vehicle operated by Fredrick S. Martin, Jr., at the time of the subject accident.
**RESPONSE: I have no idea. Because discovery is ongoing. Plaintiff will supplement this response as more information is learned.**

11.    If the operator of any of the other vehicles involved in the subject accident made any statements in your presence, state when, where, and what was said by the operator of the other vehicle(s).
**RESPONSE: None that I recall.**

12.    If any witnesses to the subject accident made any statements to you, or in your presence either at the scene or afterwards, state when, where, and what was said by such witnesses. Please also list the last known address and telephone number of all such witnesses.
**RESPONSE: None.**

13.    State whether you had been drinking any alcoholic beverages, used any drugs, or took any medication within the twenty-four (24) hours preceding the subject accident.
**RESPONSE: No.**

14.    State the names and addresses of all doctors, hospitals, or other medical providers who examined or treated you for any injuries you claim to have sustained in the accident made the subject of this lawsuit. Please also provide a calculation of such expenses incurred for treatment by those providers listed.
**RESPONSE: Please see produced medical records and expenses for a full description. As discovery is ongoing, Plaintiff reserves the right to supplement this response. At this time, Plaintiff has been treated at Andalusia Hospital, Post Office Box 760, Andalusia, Alabama 36420 and Dr. Gilbert Holland, 848 South Three Notch Street, Andalusia, Alabama 36420. At this time, Plaintiff Steven Lawson's medical expenses total $1,720.75.**

15.    Please state whether you have received any payment or settlement from any other party or on behalf of any other party involved in the subject accident. If you have received such payment or settlement, please identify the source, amount and date of payment.
**RESPONSE: None that I know of.**

16.     If you have every had injuries in the same areas of your body as you contend were injured in this accident, then state the names and addresses of all doctors, hospitals, or other medical provides who have examined or treated you for such injuries.
**RESPONSE: NA**

17.     If any insurance company or any person, firm, or corporation paid all or any portion of any expense for medicine, physicians, dentists, nurses, hospitals, or other related care or treatment which you received as a result of the injuries allegedly suffered by you in the accident made the basis of this lawsuit, state the name of the person, firm, or corporation paying such item of expense, which of the items of expense were so paid, and the total amount of the expenses that were paid.
**RESPONSE:  None that I know of.**

18.     If you have ever made claim or filed suit against any person, firm, or corporation on account of personal injuries sustained by you prior or subsequent to the date of the accident made the basis of this suit, state when, where (including venue and style), and against whom you made said claim or filed said suit.
**RESPONSE: None.**

19.     Have you ever applied for Social Security Disability benefits?  If so, please state:

(a)     the date of each such application;

(b)     the location (city) of application;

(c)     the status of the application; and

(d)     identify any attorney(s) representing you in that matter.
**RESPONSE: No.**

20.     List all damages you claim to have incurred as a result of the allegations in your Complaint and state why you claim the damage occurred, the description of the nature and extent of the damage, the monetary cost of the damage, and any efforts taken to repair, remedy, or mitigate the claimed damage.
**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad and vague. Without waiving said objection, see produced medical records and expenses.  Plaintiff claims damages for medical bills, lost wages, out-of-pocket expenses, permanent injuries, mental anguish, and pain and suffering, in an amount to be determined.  As discovery is ongoing, Plaintiff reserves the right to supplement this response.  Plaintiff is in the process of gathering out-of-pocket expenses and lost wages.**

21.     Identify each and every person whom you believe has discoverable knowledge of the claims made the basis of this suit, including in your answer each such person(s)' last known address and telephone number.

**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad and vague. Without waiving said objection, please see Plaintiffs' Initial Disclosures, previously filed in said litigation. See also the medical records for individuals who may have discoverable information.**

22. Identify each person, save counsel, to whom you have spoken about this case, and state when the communication took place and the substance of the communication.
**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad and vague. I have spoken to my brother Scott Lawson about the case. As discovery is ongoing, Plaintiff reserves the right to supplement this response.**

23. If you have ever been arrested, indicted, plead guilty, or convicted of a criminal offense, please provide the state, county and date of the arrest, indictment plea or conviction and state what the arrest, indictment or conviction was for.
**RESPONSE: Plaintiff objects to this request on the basis that it does not seek information that is admissible and is not reasonably calculated to lead to the discovery of admissible evidence.**

24. Have you ever filed bankruptcy? If so, please state the name of the court the bankruptcy was filed in, the case number, the type of bankruptcy filed, the name of the trustee in bankruptcy, the name of the attorney representing you in bankruptcy, and the disposition of the case.
**RESPONSE: No.**

25. Identify each person whom you expect to use as an expert witness in connection with the trial of this case, and as to each individual also state and identify the following information:

(a) the subject upon which the individual is expected to testify and the opinions and conclusions that the individual is expected to provide at trial;

(b) the facts upon which the individual's opinion and conclusions are based;

(c) summary of the grounds for each of the individual's opinions or conclusions;

(d) each school attended, the dates of attendance, the date of graduation, and the degrees received;

(e) each employer including the dates of employment, job titles held, and reasons for leaving that employment;

(f) each honorary society, professional society and/or professional organization to which the individual belongs or has belonged, and any offices in those organizations or societies which the individuals has held or holds and the dates each office was held;

Page 5 of 8

(g) each article or publication that the individual has authored or to which the individual has contributed;

(h) each judicial or administrative proceeding which the individual has testified in the last five (5) years or is currently expected to testify;

(i) each person with whom the individual has communicated in connection with the case and the substance of the communication;

(j) all material including without limitation, articles, manuals, treatises, books, tables, charts, statistical analysis, calculations, notes and published materials of any nature that the individual reviewed in connection with this proceeding or which the individual may utilize at the trial; and,

(k) each document created by the individual in connection with this proceeding.

**RESPONSE: Plaintiff will provide such information in accordance with this Court's scheduling order.**

26.   Have you been informed that your answers to these interrogatories are given under oath and may constitute a part of the evidence to be presented at trial?

**RESPONSE: Yes.**

27.   List the name and address of every employer which you have had for the last ten years.

**RESPONSE: Chris Salters Roofing & Construction, 203 Brandon Avenue, Opp, Alabama 36467; Ted Donaldson Construction, Highway 331, Opp, Alabama 36467; Jordan Electric, 122 Academy Drive, Andalusia, Alabama 36420; Neal Roofing & Construction, 22421 Whatley Road, Red Level, Alabama; Mike Anderson Floor Covering, Plaintiff is unable to locate further information about Mike Anderson as he has moved.**

28.   List the name and address of every health care provider who or which you have consulted in the last ten years.

**RESPONSE: See response to #14.  Dr. Steven Davis, 511 Brantley Street, Opp, Alabama 36467.**

29.   Please identify each and every source of knowledge, consisting of documents, testimony or otherwise, upon which you rely to support your contention that Swift Transportation Company, Inc., negligently and/or wantonly hired, trained, and supervised Fredrick S. Martin, Jr.

**RESPONSE: Plaintiff objects to this request on the basis that it is overly broad, vague and unduly burdensome, as well as it requests information protected by the work product doctrine. Without waiving said objection, Plaintiff is currently investigating all aspects of the subject wreck. As discovery is ongoing, Plaintiff will supplement this response as information is learned.**

30.    Please identify each and every source of knowledge including, but not limited to, documents, statements, or other forms of tangible evidence upon which you rely to entrusted a vehicle to Fredrick S. Martin, Jr. in the Complaint.

**RESPONSE:  Plaintiff objects to this request on the basis that it is overly broad, vague and unduly burdensome, as well as it requests information protected by the work product doctrine.  Without waiving said objection, Plaintiff is currently investigating all aspects of the subject wreck.  As discovery is ongoing, Plaintiff will supplement this response as information is learned.**

31.    Please state the name, address, and telephone number of each individual from whom you, or someone acting on your behalf, has taken a written or recorded statement.

**RESPONSE: Plaintiff objects to this request on the basis that is requests information protected by the work product doctrine.**

32.    Please state the name, address, and telephone umber of each person you intend to call as a witness at the trial of this cause.

**RESPONSE:  Plaintiff will provide such information in accordance with this Court's scheduling order.**

_Steven Lawson_
Steven Lawson

_Matt Glover_
R. Matt Glover, Esquire
**PRINCE GLOVER LAW**
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406
(205) 345-1234

Stacy Bryan Brooks, Esquire
**JONES & JONES, P.C.**
530 East Three Notch Street
Andalusia, Alabama 36520
(334) 222-3161

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing upon the following counsel of record by placing same in U.S. mail, addressed as follows and postage prepaid, on this the _20th_ day of September, 2007.

Lea Richmond, IV, Esquire


_____
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SCOTT D. LAWSON and )
STEVEN LAWSON, )
                 )
        Plaintiffs, )
                 )
v. )    Case No.:    2:07cv356-MHT
                 )
SWIFT TRANSPORTATION and )
FREDRICK S. MARTIN, JR., )
                 )
        Defendants. )

---

## DEFENDANT FREDRICK S. MARTIN, JR.'S RESPONSES TO PLAINTIFFS' FIRST INTERROGATORIES

---

COMES NOW Defendant **Fredrick S. Martin, Jr.** (hereinafter the "Defendant"), and, without waiving any of his previously served general and specific objections to the Plaintiffs' First Interrogatories, now responds as follows:

1.    State your full name, date of birth, social security number, driver's license state and driver's license number, residence address, giving both your street address and post office address, if applicable, and your employment address.

    <u>RESPONSE</u>:  Fredrick Stanley Martin, Jr.

                Date of Birth: **7/31/45**

                TN Driver License #: **099659955**

                **For privacy reasons, this Defendant is not listing his Social Security Number.**

                **Residence Address: 533 East 20th Street, P.O. Box 3285, Cookeville, TN 38502**

EXHIBIT 4

Work Address: Swift Transportation Co., Inc. – Memphis

Terminal

2.    Are you named correctly in this lawsuit? If not, please state your correct full name.

RESPONSE: Yes.

3.    List all of your home addresses for the 10-year period immediately preceding the accident.

RESPONSE: 533 East 20th Street, P. O. Box 3285, Cookeville, TN 38502.

210 Holder Ave., Apt. 6, Cookeville, TN 38502.

East Litchfield, CT (I do not recall the address).

4.    Do you have or have you ever had a commercial driver's license? If the answer to this interrogatory is yes, please list all states in which you have held a commercial driver's license.

RESPONSE: Yes – Tennessee and Connecticut.

5.    Please list the name of each physician that you have seen over the last ten years.

RESPONSE: I am currently seen by Dr. Sri Haran at the VA Medical Center in Murfreesboro, TN. I have seen several physicians at the VA Medical Centers in Murfreesboro, TN and in New Britain, CT over the last ten years.

6.    Have you ever claimed disability benefits from any government entity? If the answer to this question is yes, please provide the following:

a.    the name of the government entity;

b.    the year when the claim for disability was made;

c.    the basis for claiming disability;

c.    whether or not the entity deemed you disability; and,

e.    the amount you received in disability benefits, including the frequency of the amount received.

RESPONSE: No.

7.    Have you ever been involved in another accident in which you were driving a truck? If the answer to this interrogatory is yes, please provide the following information for each accident:

a.    the date;

b.    the location; and,

c.    whether or not you received a citation or were charged with any traffic offense.

RESPONSE: Yes.

1/12/07 – Baytown, TX (A student driver was driving and hit a parked vehicle while making a left turn at a truck stop. I was in the passenger seat.)

7/2/05 – Tucumcari, NM (I hit another tractor-trailer's mirror with one of mine.)

9/30/01 – I do not recall the location (I hit a deer.)

6/22/01 – I believe it was in Utah (A student driver was driving when someone hit us. I was in the passenger seat.)

1/25/01 – I do not recall the location (Some people where I was delivering claimed I hit another trailer that was parked. My employer, Baylor Trucking, denied the claim.)

11/29/00 – I do not recall the location (I made a left turn and hit a pickup truck that had been parked and began moving during my turn. I knocked one of his mirrors off.)

5/8/00 – I do not recall the location (I backed into a loading dock and damaged a door hinge on the trailer I was pulling.)

I was not cited in any of these incidents.

8.    Have you ever been charged with any traffic offenses?  If the answer to this interrogatory is yes, please provide the following information for each offense:

        a    the date;

        b    the location;

        c.    your employer at the time;

        d    the law enforcement agency who charged you;

        e    the court or other authority having jurisdiction of the charges; and,

        f.    the disposition of the charges.

RESPONSE:  Yes.  A speeding citation was issued to me in 2006 in California. I believe it was the California Highway Patrol who charged me. I paid the ticket. Also, I was charged with violation of truck lane restriction on November 10, 2006 in North Carolina. I do not recall which law enforcement agency issued the citation. I paid the ticket. I was employed by Swift Transportation Co., Inc.

9.    Give the name and address of your present employers, if any, the nature and title of work you perform for each employer, the wage or salary you receive for said work, and when you began working for each employer.

RESPONSE: Swift Transportation Co., Inc. – 2200 South 75th Avenue, Phoenix, AZ, 85043; company driver; 41 cents per mile; August or September 2004.

10.    Have you ever been discharged from employment with any company?  If so, please state the company's name and address and describe the reason or reasons that you were discharged from your employment.

RESPONSE: No.

11.    Please state the name, address, and telephone number of any and all witnesses you know of to the collision made the subject of the above-styled case or of anyone who you know, or that you have reason to believe, has or may have any knowledge whatsoever of any facts or any issues involved in the said collision and/or in this lawsuit, including the name, residence address, work address, and telephone number of any and all persons who also occupied the vehicle you were operating when the collision occurred.

RESPONSE:  Scott D. Lawson – may be contacted only through counsel.

Steven Lawson – may be contacted only through counsel.

Fredrick S. Martin, Jr. – may be contacted only through counsel.

Jose A. Pagan – 501 East Maple Ave., Holly Springs, NC 27540 (last known address).

Alabama State Trooper Steven F. McGowin.

This response will be supplemented if other witnesses to the automobile accident become known.

12.    Please give a full description of the vehicle operated by you at the time of the accident including:

a.    the model year;

b.    the make;

c.    the model;

d.    mechanical defects known to you at the time of the accident;

e.    mechanical defects at the time of the accident that were discovered later;

    f.     its load capacity;

    g.    whether or not the truck was loaded at the time of the accident; and

    h.    the types of brakes on the truck.

**RESPONSE:** **I drove a 2007 Volvo, model TT, at the time of the subject accident. To my knowledge, the tractor did not have any mechanical defects. The tractor had air brakes. I do not know what the load capacity was.**

13.    With respect to the trip you were making at the time of the collision, please state:

    a.    the name and address of each and every person who had any interest in the trip;

    b.    the nature of each such interest; and

    c.    the connection of each person with the trip in question.

**RESPONSE:** **At the time of the subject accident, I worked for Swift Transportation Co., Inc. I do not recall who Swift Transportation contracted with in connection with the trip I was making at the time of the accident. Please reference documents produced by Swift Transportation Co., Inc.**

14.    With regard to the trip you were making at the time of the collision, state:

    a.    the place where the trip was commenced;

    b.    the planned destination;

    c.    the length of time your vehicle had been in continuous operation from the commencement of the trip until the time of the collision; and

      d.     the distance, in miles, that your vehicle had traveled from the commencement of the trip until the time of the collision.

**RESPONSE: I cannot recall. Please reference documents produced by Swift Transportation Co., Inc.**

15.     At the time of this occurrence, had you ever had your vehicle operator's licenses revoked, suspended, or withdrawn by the licensing authority?

**RESPONSE: No.**

16.     Did you apply the brakes at any time just prior to the accident? If so, please state:

      a.     the speed of the vehicle operated by you when you first applied the brakes;

      b.     the distance in feet from your vehicle to the point of impact when you first applied the brakes; and

      c.     describe any swerving or skidding by your vehicle that resulted after you applied the brakes, giving distance and direction.

**RESPONSE: Yes; I had shifted down and applied my brakes just prior to the accident because I was turning. I cannot recall the speed of the vehicle I was operating when I first applied my brakes. There was no swerving or skidding caused by the application of my brakes.**

17.     Were you injured or evaluated for any potential injury as the result of the accident? If the answer to this interrogatory is yes, please provide the following information:

      a.     the name of the medical provider;

    b.    the date of the treatment or evaluation; and,

    c.    the nature of the treatment or evaluation.

RESPONSE:  No.

18.    Please list the name, address, and your job position at each of your prior employers for the last ten (10) years.

RESPONSE:  Swift Transportation Co., Inc. – 2200 South 75th Avenue,

    Phoenix, AZ, 85043; company driver.

    Baylor Trucking Inc. – 9269 E. State Road 48, Milan, IN

    47031-9754; company driver.

    Wagner Ford – 1285 Hopmeadow Street, Simsbury, CT 06070;

    car salesman.

19.    State whether you have ever been convicted of a felony.  If your answer is in the affirmative, state:

    a    the charge that was placed against you concerning this felony;

    b    the date of the conviction;

    c.    the court in which you were convicted; and

    d.    the sentence and fine assessed.

RESPONSE:  No.

20.    During the 24 hour period immediately preceding the accident, did you take or ingest any drug, narcotic, sedative, tranquilizer, amphetamines, etc., or any other form of medication?

RESPONSE:  No.

21.    If your answer to the preceding interrogatory is in the affirmative, please state:

a.    the brand and generic name of each such drug or medication;

b.    the date and time of day of taking each such drug; and

c.    the dose taken.

RESPONSE:  N/A

22.    In the 24-hour period preceding the accident, please state if you had anything of an alcoholic nature to drink.

RESPONSE:  No.

23.    If your answer to the preceding interrogatory is in the affirmative, please state:

a.    the name and address of each place where you had each such drink;

b.    the name and address of each person who was present at the time you had each such drink;

c.    the type, brand, and name of each such drink consumed;

d.    the number, quantity, and amount of each such type of drink consumed; and

e.    the date, hour, and minute, of the time of each such drink.

RESPONSE:  N/A

24.    Did you at any time during the 6 hours immediately following the accident submit to a breathalizer test, or a blood test, or any other test designed to measure sobriety?

RESPONSE:  No.

25.    Has your attorney advised you that the answers to these interrogatories are under oath?

RESPONSE:  Yes.

26.    Please give a brief narrative in your own words describing what happened immediately before, during, and after the accident made the basis of this claim. Please include where you had traveled from and the destination of your trip.

**RESPONSE:** I was driving on Highway 84, looking for the location of a pickup scheduled for the next morning. It was after dark and pitch black outside. I realized I needed to turn around and go the other direction, so I looked in my side mirrors to make sure no one was coming from behind me. I saw no oncoming vehicles, so I put on my left-hand blinker. I then turned left from the right lane in order to make a U-turn across the paved median. I made my turn from the right lane because I needed more room to swing the trailer I was pulling. My tractor was in the median, and I was stopped to make sure no traffic was coming in the lanes I was entering, when the squeal of tires caused me to look up. In my side mirror, I saw the car skid and then collide with my trailer.

FREDRICK S. MARTIN, JR.

STATE OF _Tennessee_ )

COUNTY OF _Putnam_ )

Before me, a Notary Public in and for said County, in said State, personally appeared Fredrick S. Martin, Jr., whose name is signed to the foregoing Responses to First Interrogatories, and who is known to me or has provided proper identification and who, being by me first duly sworn and deposed, said that he has knowledge of the facts stated in the foregoing Interrogatories, and that the said facts as therein stated are true and correct.

Sworn to and subscribed before me on this the _28th_ day of _august_, 2007.

NOTARY PUBLIC
My Commission Expires: _1/21/09_

AS TO OBJECTIONS:

Lea Richmond, IV (ASB-8479-I74R)
**ATTORNEY FOR DEFENDANTS**

OF COUNSEL:
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone:    (205) 822-2006
Facsimile:    (205) 822-2057

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of Sept. , 2007, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

R. Matt Glover, Esq.
**PRINCE GLOVER LAW**
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406

Stacy Bryan Brooks, Esq.
**JONES & JONES, P.C.**
530 East Three Notch Street
Andalusia, Alabama 36520

Of Counsel

# FREEDOM COURT REPORTING

1       IN THE UNITED STATES DISTRICT COURT

2      FOR THE MIDDLE DISTRICT OF ALABAMA

3            NORTHERN DIVISION

4   SCOTT D. LAWSON and       )

5   STEVEN LAWSON,            )

6         Plaintiffs,         ) CV2:07cv356-MHT

7   vs.                       )

8   SWIFT TRANSPORTATION CO., )

9   INC., and FREDRICK S.     )

10  MARTIN, JR.,              )

11        Defendants.         )

12

13    DEPOSITION OF FREDRICK S. MARTIN, JR.

14

15       In accordance with the Federal

16  Rules of Civil Procedure, as Amended,

17  effective May 15, 1988, I, Maya Rose, am

18  hereby delivering to MATT GLOVER, the

19  original transcript of the oral testimony

20  taken on the 15th day of January, 2008.

21       Please be advised that this is

22  the same and not retained by the Court

23  Reporter, nor filed with the Court.

**EXHIBIT 5**

FREEDOM COURT REPORTING

Page 69

1       Q.    No, I don't know if I said -- I

2   sure didn't mean to say passenger seat if

3   I did.

4       A.    I thought that's what you said,

5   but I'm not sure either.

6       Q.    When you were over on the side

7   of the road and you made the conscious

8   decision to make a U-turn from the right

9   lane and cross over another lane into the

10  median, did you look in your rearview

11  mirror to see if a car was coming?

12      A.    Yes.

13          MR. GODWIN:  Object to the form

14  of the question.

15      Q.    And do you have any explanation

16  for why you didn't see the car coming?

17      A.    No, sir, I have no idea why I

18  couldn't see it.  As I said, it was pitch

19  black.  I should have seen the lights if

20  they were -- if they weren't at an angle

21  behind a hill or something.  I don't know.

22  But there was nothing.  It was pitch

23  black.  There was no light.  And so I had

## FREEDOM COURT REPORTING

Page 70

1    no reason to believe there was a car

2    there.

3         Q.    Did you have an opportunity to

4    speak to either of the Lawson boys that

5    night?

6         A.    Well, yes, I did.  I spoke to

7    the passenger, the brother, who was

8    rational.  The -- Scott, the driver, was

9    crying like a five-year-old girl and just

10   screaming, what am I going to do?  What am

11   I going to do?  My car.  And his brother

12   was, like, calm down.  It's just an

13   accident.  It will be okay.  And he just

14   was -- he was ranting and raving and

15   crying and just carrying on.  I -- there

16   was no talking to him.  The police

17   officers tried to speak with him and

18   couldn't for a while.

19         MR. GODWIN:  You've answered

20   the question.

21         Q.    When you got out of your

22   vehicle and saw the damage that was done

23   to the Lawson vehicle, did it ever cross

# FREEDOM COURT REPORTING

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE MIDDLE DISTRICT OF ALABAMA

3                  NORTHERN DIVISION

4    SCOTT D. LAWSON and        )

5    STEVEN LAWSON,             )

6            Plaintiffs,        )CV2:07cv356-MHT

7    vs.                        )

8    SWIFT TRANSPORTATION CO.,  )

9    INC., and FREDRICK S.      )

10   MARTIN, JR.,               )

11            Defendants.       )

12

13      DEPOSITION OF FREDRICK S. MARTIN, JR.

14

15           In accordance with the Federal

16   Rules of Civil Procedure, as Amended,

17   effective May 15, 1988, I, Maya Rose, am

18   hereby delivering to MATT GLOVER, the

19   original transcript of the oral testimony

20   taken on the 15th day of January, 2008.

21           Please be advised that this is

22   the same and not retained by the Court

23   Reporter, nor filed with the Court.

**EXHIBIT 6**

# FREEDOM COURT REPORTING

Page 56

1  you were just going to turn the vehicle

2  around and go -- make a U-turn?

3       A.    Well, yes.

4       Q.    Had you gone down the road at

5  all to do that or were you trying to make

6  the U-turn from where you were parked?

7       A.    No.  I pulled out -- we weren't

8  at the point of turning where we parked.

9  I pulled out onto the road and went a

10 short distance, and then made the turn.

11      Q.    Can you give me an idea of what

12 that short distance would have been?

13      A.    No, sir, not really.

14      Q.    Do you think it would have been

15 as much as a half a mile?

16      A.    I really don't know.  I don't

17 really don't know how to answer that.

18      Q.    Okay.  When did you first see

19 the vehicle where my clients were?

20      A.    After I had completed the turn

21 and was in the middle of the median up

22 with the nose of the tractor right at the

23 oncoming -- right at the -- before the

1    oncoming traffic from the other direction.

2    And as I got that turn made, I heard the

3    squealing of the tires, looked out the

4    window and saw that car at that point.

5        Q.    Okay.  So your testimony is

6    that you didn't see them until your

7    tractor was in the median?

8        A.    That's correct.

9        Q.    Now, did you try to make that

10   U-turn from the far right lane?

11           MR. GODWIN:  Object to form.

12   Go ahead and answer.

13       Q.    Do you know what I mean?

14       A.    Yes.

15       Q.    Okay.  There's two lanes going

16   on --

17       A.    That's correct.

18       Q.    -- each side of Highway 84.

19       A.    Yes.

20       Q.    Which lane --

21       A.    I was in the right lane.

22           MR. GODWIN:  Let him finish his

23   question first.

# FREEDOM COURT REPORTING

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                 MIDDLE DISTRICT OF ALABAMA

3                       NORTHERN DIVISION

4

5

6      SCOTT D. LAWSON and
       STEVEN LAWSON,
7

            Plaintiffs,
8

       vs.                        CASE NO. 2:07cv356-MHT
9

10     SWIFT TRANSPORTATION
       CO., INC., and
11     FREDRICK S. MARTIN, JR.,
12              Defendants.
13

14

                   * * * * * * * * * * *
15

16          DEPOSITION OF SCOTT DANIEL LAWSON, taken

       pursuant to stipulation and agreement before Sherry
17

       McCaskey, Certified Court Reporter and Commissioner
18

       for the State of Alabama at Large, in the Law
19

       Offices of Jones & Jones, 530 East Three Notch
20

       Street, Andalusia, Alabama, on Tuesday, October 23,
21

       2007, commencing at approximately 1:15 p.m.
22

                   * * * * * * * * * * *
23

EXHIBIT 7

# FREEDOM COURT REPORTING

Page 72

1    Q.   Did you have any sort of confrontation with

2         the driver of the tractor trailer?  Did y'all

3         exchange any heated words?

4    A.   No, sir.

5    Q.   Was the driver of the tractor trailer nice to

6         you?

7    A.   We didn't really exchange any words I don't

8         think.

9    Q.   Was the first thing that he asked you, whether

10        or not you were okay?

11   A.   Where we came from.

12   Q.   And then he asked you if you were all right?

13   A.   Yeah.

14   Q.   Did you call 911?

15   A.   No, sir.

16   Q.   Did your brother call 911?

17   A.   No, sir.

18   Q.   Do you know if anyone did?

19   A.   Somebody who lives down on Padgett Road across

20        from -- to my understanding now -- across from

21        where the accident happened heard the accident

22        and called 911 I believe.  I'm not sure.

23   Q.   Are you aware of anybody that purportedly saw

# FREEDOM COURT REPORTING



Page 1

1      IN THE UNITED STATES DISTRICT COURT

2          MIDDLE DISTRICT OF ALABAMA

3              NORTHERN DIVISION

4

5

6    SCOTT D. LAWSON and
     STEVEN LAWSON,

7

             Plaintiffs,

8

     vs.                    CASE NO. 2:07cv356-MHT

9

10   SWIFT TRANSPORTATION
     CO., INC., and

11   FREDRICK S. MARTIN, JR.,

12          Defendants.

13

14

                 * * * * * * * * * * *

15

             DEPOSITION OF STEVEN FRANCIS McGOWIN, taken

16

     pursuant to stipulation and agreement before Sherry

17

     McCaskey, Certified Court Reporter and Commissioner

18

     for the State of Alabama at Large, in the Law

19

     Offices of Jones & Jones, 530 East Three Notch

20

     Street, Andalusia, Alabama, on Tuesday, October 23,

21

     2007, commencing at approximately 10:15 a.m.

22

                 * * * * * * * * * * *

23

EXHIBIT 8

# FREEDOM COURT REPORTING

Page 20

1    where the business was located at. Had pulled

2    to the shoulder of the road, had stopped. Had

3    then determined that he needed to go back into

4    Andalusia. Pulled onto the -- onto the

5    right-hand lane. Believed that he was in the

6    left-hand lane, the inside lane. Saw the car

7    in his mirror as it was coming down the hill.

8    And -- and as it was starting up the hill.

9    And then still believing that he was in the

10   left-hand lane, began to make his left turn to

11   make a U-turn.

12   Q.   Okay. Were you able to make a determination

13        as to which of the two vehicles was at fault

14        in the accident?

15   A.   The tractor trailer.

16        MR. RICHMOND:  Object to the form.

17   Q.   He's just protecting the Record. Will you

18        repeat your answer, please?

19   A.   The tractor trailer.

20   Q.   And what are some of things that led you to

21        that conclusion?

22   A.   The positioning of the vehicle at the -- at

23        it's final resting point. The vehicle -- it

Exhibit 9, a DVD copy of videotape from Officer Steven McGowin's police cruiser, has been filed conventionally with the clerk's office.

EXHIBIT 9

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Middle                                 DISTRICT OF                          Alabama

Scott D. Lawson and Steven Lawson                    **SUBPOENA IN A CIVIL CASE**

V.

Swift Transportation Co, Inc, et. al.
                                                     Case Number:[1]  CV 2:07cv356-MHT

TO:  Andalusia Police Department
     Attention: Lt. Matt Mancil
     Post Office Box 429
     Andalusia, Alabama 36420

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
   testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
   in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
   place, date, and time specified below (list documents or objects):

Please produce a copy of any and all videotape taken at the scene of a wreck which occurred March 15, 2007, in
Andalusia, at or near Highway 84E and Shreve Road, whereby a Swift Transportation tractor trailer driven by Frederick
S. Martin, Jr. collided with a car driven by Scott Lawson and occupied by Steven Lawson.

| PLACE      Prince Glover Law, 1 Cypress Point, 701 Rice Mine Road N, Tuscaloosa, AL 35406 | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Matt Glover* | 10/24/07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Matt Glover, Attorney for Plaintiffs
1 Cypress Point, 701 Rice Mine Rd N, Tuscaloosa, AL 35406

cc: Lea Richmond, IV, Esquire
    John Jones, Jr., Esquire

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**EXHIBIT 10**

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
               DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).



Attorneys

Robert F. Prince
R. Matt Glover
Joshua P. Hayes

Areas of Practice

Personal Injury
Insurance Fraud
Environmental Law
Wrongful Death

January 9, 2008

Lea Richmond, IV, Esquire
Brandi Kellis, Esquire
Carr Allison
100 Vestavia Parkway, Suite 200
Birmingham, Alabama 354216

RE:    Scott D. Lawson and Steven Lawson v Swift Transportation, et. al.
       U.S. District Court, Middle District, Northern Division
       2:07cv356-MHT

Dear Counsel:

 Enclosed please find a copy of the video provided to us by the Andalusia Police Department concerning the subject wreck. Should you have any questions, please call.

"Seek justice,
encourage the
oppressed. Defend
the cause of the
fatherless, plead
the case of the
widow.
Isaiah 1:17 NIV

Sincerely,

*Kacie Davis*

Kacie Davis
Legal Assistant to Matt Glover

Members
Alabama Association
for Justice

Enclosure                    3982.1
                             4022.1

1 Cypress Point
701 Rice Mine Road N.

P.O. Box 20149
(35402)

Tuscaloosa, AL 35406

205.345.1234

Fax 205.752.6313

Toll Free
800.536.1105

www.princelaw.net

Dena Prince
of Counsel

# FREEDOM COURT REPORTING



Page 1

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                  MIDDLE DISTRICT OF ALABAMA
 3                      NORTHERN DIVISION
 4
 5
 6     SCOTT D. LAWSON and
       STEVEN LAWSON,
 7
              Plaintiffs,
 8
       vs.                          CASE NO. 2:07cv356-MHT
 9
10     SWIFT TRANSPORTATION
       CO., INC., and
11     FREDRICK S. MARTIN, JR.,
12            Defendants.
13
14
                    * * * * * * * * * * *
15
              DEPOSITION OF STEVEN FRANCIS McGOWIN, taken
16
       pursuant to stipulation and agreement before Sherry
17
       McCaskey, Certified Court Reporter and Commissioner
18
       for the State of Alabama at Large, in the Law
19
       Offices of Jones & Jones, 530 East Three Notch
20
       Street, Andalusia, Alabama, on Tuesday, October 23,
21
       2007, commencing at approximately 10:15 a.m.
22
                    * * * * * * * * * * *
23
```

**EXHIBIT 11**

## FREEDOM COURT REPORTING

Page 40

1   Q.   How far back did you stop your police cruiser

2        from the area of impact?

3   A.   I'd say probably about 50 feet.  I'd say

4        between 25 and 50 feet.

5   Q.   Did you have your video camera running?

6   A.   Yes, I would have.

7   Q.   And was that -- did that video camera run the

8        entire time that you were on the scene?

9   A.   Actually, I believe the videotape ran out

10       sometime while the -- while I was at the

11       scene.

12  Q.   But the videotape would have been turned on

13       and running as you approached the scene, or

14       did you turn it on after you came to a stop at

15       the scene?  I'm just trying to get a time

16       frame as to when --

17  A.   I don't recall.

18  Q.   Have you reviewed that videotape?

19  A.   No, I have not.

20  Q.   Has that tape been maintained?

21  A.   Yes, it has.  All of our videotapes, when the

22       officer signs for it, there's a log that the

23       officer signs saying that -- that they have

Page 41

1       been issued that specific tape.  Once that

2       specific tape has ended and you insert a new

3       tape into your camera, those -- you take that

4       tape, sign it in the log, saying that it is --

5       with a date, time of when that tape ended.

6       And then that tape is then placed in an

7       evidence locker which is a -- which is

8       accessible to put a tape in but you can't take

9       it out unless you have the key.  The only

10      person who has the key to that particular

11      locker is the evidence custodian for the

12      police department, who at that time period was

13      Sergeant Matt Mansell, who now works for the

14      Alabama Criminal Justice Information Center as

15      a regional investigator.

16   Q.  So if I understand you correctly in this

17      particular instance, you fully documented the

18      chain of custody with respect to that tape

19      inasmuch as you removed it, signed some

20      paperwork documenting that you were turning

21      that tape in to the custodian of evidence?

22   A.  That's correct.

23   Q.  And as far as you know, that tape should still

# FREEDOM COURT REPORTING

Page 42

1              be at the Andalusia Police Department in the

2              evidence locker.

3     A.      Well, it will be -- you'd have to speak to the

4              evidence custodian as to how it is maintained,

5              but I do know that it is maintained as

6              evidence.

7     Q.      Okay.  My question --

8     A.      Every tape within the department is maintained

9              as evidence -- as controlled evidence.

10    Q.      You have no knowledge of it being removed,

11             taped over, or anything of that nature?

12    A.      Not to my knowledge.

13    Q.      Is that something typically parties need to

14             subpoena from the police department in order

15             to get a copy of?

16    A.      Yes, they would.

17    Q.      That will not be released voluntarily for a

18             fee or copied for a charge like an accident

19             report?

20    A.      You're -- you're -- that's an administrative

21             procedure, and I don't have anything to do

22             with administration or operations of the

23             department.

# FREEDOM COURT REPORTING



Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 MIDDLE DISTRICT OF ALABAMA
 3                      NORTHERN DIVISION
 4
 5
 6        SCOTT D. LAWSON and
          STEVEN LAWSON,
 7
               Plaintiffs,
 8
          vs.                      CASE NO. 2:07cv356-MHT
 9
10        SWIFT TRANSPORTATION
          CO., INC., and
11        FREDRICK S. MARTIN, JR.,
12             Defendants.
13
14
                   * * * * * * * * * * *
15
               DEPOSITION OF STEVEN FRANCIS McGOWIN, taken
16
     pursuant to stipulation and agreement before Sherry
17
     McCaskey, Certified Court Reporter and Commissioner
18
     for the State of Alabama at Large, in the Law
19
     Offices of Jones & Jones, 530 East Three Notch
20
     Street, Andalusia, Alabama, on Tuesday, October 23,
21
     2007, commencing at approximately 10:15 a.m.
22
                   * * * * * * * * * * *
23
```

EXHIBIT 12

## FREEDOM COURT REPORTING

Page 40

1  Q.  How far back did you stop your police cruiser

2      from the area of impact?

3  A.  I'd say probably about 50 feet.  I'd say

4      between 25 and 50 feet.

5  Q.  Did you have your video camera running?

6  A.  Yes, I would have.

7  Q.  And was that -- did that video camera run the

8      entire time that you were on the scene?

9  A.  Actually, I believe the videotape ran out

10     sometime while the -- while I was at the

11     scene.

12 Q.  But the videotape would have been turned on

13     and running as you approached the scene, or

14     did you turn it on after you came to a stop at

15     the scene?  I'm just trying to get a time

16     frame as to when --

17 A.  I don't recall.

18 Q.  Have you reviewed that videotape?

19 A.  No, I have not.

20 Q.  Has that tape been maintained?

21 A.  Yes, it has.  All of our videotapes, when the

22     officer signs for it, there's a log that the

23     officer signs saying that -- that they have

# FREEDOM COURT REPORTING

1   Q.   Did you ever go back and review that videotape

2        when conducting your investigation of this

3        accident?

4   A.   You've already asked me that, and I said, no.

5   Q.   When you arrived on the scene, could you see

6        the occupants of -- I'll refer to it as the

7        Chevy.  It was a --

8   A.   The Chevy Lumina?

9   Q.   Lumina.

10  A.   Again, it seems like one of them was out of

11       the vehicle and one of them was in the

12       vehicle.  Or both of them may already -- had

13       been out of the vehicle.  I -- and somewhere

14       in there, as I'm arriving at the scene -- I'm

15       not really sure, but I -- I almost want to say

16       that -- that both of them were out.  But if

17       both of them were not out, it would have been

18       one was out and one was getting out.

19  Q.   How quickly did it take you to determine that

20       someone was not killed?

21  A.   When I walked up and I looked in the vehicle

22       and saw that no one was in it with their head

23       decapitated.

FREEDOM COURT REPORTING

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE MIDDLE DISTRICT OF ALABAMA

3                     NORTHERN DIVISION

4    SCOTT D. LAWSON and          )

5    STEVEN LAWSON,               )

6            Plaintiffs,          )CV2:07cv356-MHT

7    vs.                          )

8    SWIFT TRANSPORTATION CO.,)

9    INC., and FREDRICK S.        )

10   MARTIN, JR.,                 )

11           Defendants.          )

12

13      DEPOSITION OF FREDRICK S. MARTIN, JR.

14

15           In accordance with the Federal

16   Rules of Civil Procedure, as Amended,

17   effective May 15, 1988, I, Maya Rose, am

18   hereby delivering to MATT GLOVER, the

19   original transcript of the oral testimony

20   taken on the 15th day of January, 2008.

21           Please be advised that this is

22   the same and not retained by the Court

23   Reporter, nor filed with the Court.

EXHIBIT 13

# FREEDOM COURT REPORTING

Page 61

1    refill.

2              (Whereupon, a short break was

3              taken.)

4         Q.    (BY MR. GLOVER:)  Mr. Martin, I

5    want to give you the opportunity to review

6    a question and answer.  And by all means,

7    you have a right to look at as much

8    information as you want.  I'm not trying

9    to trick you.  I just -- I want you to

10   look at what the officer has testified

11   about concerning his interview with you

12   that night.

13        A.    Uh-huh.

14        Q.    And just to look at it, and I

15   want to ask you a few questions about it.

16              MR. GODWIN:  May I see --

17              MR. GLOVER:  Sure.

18              MR. GODWIN:  -- what part

19   you're asking him to take at look at?

20              MR. GLOVER:  He can look at all

21   of it, but if you want on the right --

22   here, let me show you.

23              MR. GODWIN:  The tabbed

## FREEDOM COURT REPORTING

Page 62

1    portion?

2          MR. GLOVER:  Well, that's just

3    the page.  It says "And what did he tell

4    you happened?"

5          MR. GODWIN:  Okay.

6          MR. GLOVER:  And then the

7    answer.

8          MR. GODWIN:  Thank you.

9    (Reviewing document.)  Okay.  And you're

10   asking him to look at his answer?

11         MR. GLOVER:  Just to, first,

12   look at his answer.

13       A.   Uh-huh

14         MR. GODWIN:  It starts right

15   there, "And what did he tell you

16   happened?"

17       A.   (Reviewing document.)

18       Q.   (BY MR. GLOVER:)  And you've

19   had an opportunity to read that?

20       A.   Yes, I have.

21       Q.   Do you believe that there are

22   some differences in what the officer has

23   testified you told him and what you're

# FREEDOM COURT REPORTING

1    telling me today?

2         A.    Yes.

3         Q.    Do you think the officer is

4    wrong about this?

5         A.    Yes.

6         Q.    And just so we know what we're

7    talking about here, according to the

8    officer, you informed him that you saw the

9    Lawson car sometime before the wreck

10   occurred?  I mean, you recognize that in

11   the answer; right?

12        A.    That's what --

13        Q.    That he provided?

14        A.    That's what he says, yes.

15        Q.    But you're saying that's not

16   accurate?

17        A.    That's true.  That's not

18   accurate.

19             MR. GODWIN:  Object to the form

20   to the extent that I think it

21   mischaracterizes some of his prior

22   testimony today.

23        Q.    I know earlier you said that