## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **SCOTT D. LAWSON and** | ) | |
| **STEVEN LAWSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:    2:07cv356-MHT** |
| | ) | |
| **SWIFT TRANSPORTATION and** | ) | |
| **FREDRICK S. MARTIN, JR.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### DEFENDANTS' MOTION FOR LEAVE TO REPLY

---

COME NOW the Defendants, **Fredrick S. Martin, Jr.**, and **Swift Transportation Co., Inc.**, (hereinafter "Defendants") and move this Court for leave to file a reply to the Plaintiffs' response brief opposing the Defendants' pending Motion for Partial Summary Judgment. The Defendants' proposed Reply is attached hereto.

The Defendants, on February 19, 2008, moved for partial summary judgment as to the Plaintiffs' claims of wantonness. (Doc. 27). On March 13, 2008, Plaintiffs timely responded. (Doc. 33).

The original Scheduling Order in this action sets out a briefing deadline for a response to a summary judgment motion, but not for a subsequent reply by the moving party. The law clerk assigned to this case has informed defense counsel via telephone that the Defendants would have one (1) week from March 17, 2008, to file such a reply, making March 24, 2008, the deadline for same. The Defendants now respectfully request leave to file the attached Reply by that deadline.

s/ Lea Richmond, IV
Lea Richmond, IV (ASB-8479-l74r)
**ATTORNEY FOR DEFENDANTS**

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone: (205) 822-2006
Facsimile: (205) 822-2057

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of March, 2008, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

R. Matt Glover, Esq.
**PRINCE GLOVER LAW**
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406

Stacy Bryan Brooks, Esq.
**JONES & JONES, P.C.**
530 East Three Notch Street
Andalusia, Alabama 36520

s/ Lea Richmond, IV
Of Counsel

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SCOTT D. LAWSON and | ) | |
| STEVEN LAWSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:    2:07cv356-MHT |
| | ) | |
| SWIFT TRANSPORTATION and | ) | |
| FREDRICK S. MARTIN, JR., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

---

COME NOW the Defendants, **Fredrick S. Martin, Jr.**, and **Swift Transportation Co., Inc.**, and, contemporaneously with their Motion for Leave to file same, submit this, their Reply Brief in support of their Motion for Partial Summary Judgment, stating as follows:

## I. <u>INTRODUCTION</u>

On February 19, 2008, the Defendants moved for summary judgment as to the Plaintiffs' claims of wantonness.  (Doc. 27).  The Plaintiffs timely filed a response brief on March 13, 2008.  (Doc. 33).  In it, they rely on disputed facts, mischaracterize testimony in this case, cite to case law involving facts that sharply contrast with the those found here, and urge this Court to ask the wrong questions

in determining whether the evidence might support the Plaintiffs' wantonness claims. For the reasons outlined below, the Defendants' Motion for Partial Summary Judgment should be granted.

## II.  ARGUMENT

**A.    The Plaintiffs Rely On Disputed Facts And/Or Mischaracterize Testimony On A Number Of Important Points In An Attempt To Make Defendant Fred Martin's Actions Appear Wanton.**

A comparison of the actual testimony given in this case to what the Plaintiffs try to make it stand for in their response brief exposes the lengths to which they go to try to make the facts point to wantonness when they simply do not do so. Simply put, the Plaintiffs put entirely too much "spin" on the evidence in their response.

**1.    Whether Mr. Martin Signaled His U-Turn Is Disputed.**

The Plaintiffs point to nothing but their own self-serving deposition testimony to support their statement that "the driver of the Swift tractor-trailer did not signal that he was going to turn." (Doc. 33, p. 4). **In truth, whether Mr. Martin initiated his turn signal prior to beginning his U-turn is very much in dispute.** According to Mr. Martin's sworn written interrogatory responses, he <u>did</u>

---

[1] The Plaintiffs also rely on inadmissible evidence to support their opposition to the Defendants' dispositive motion. The Defendants seek remedy for this by filing contemporaneously with this Reply a Motion to Strike Exhibits 2 and 3 to the Plaintiffs' Response to the Defendants' Motion for Partial Summary Judgment (Doc. 33; Doc. 37-2).

put on his left-hand turn signal before turning. (Def. Fredrick S. Martin, Jr.'s Resp. to Pls.' First Interrog. 26, attached to Doc. 27 as Ex. 4). Also, the videotape submitted as Exhibit 9 to the Defendants' Brief in Support of their Motion for Partial Summary Judgment has Mr. Martin telling the investigating officer that he had his signal on when he started to turn. (See Ex. 9 to Doc. 27, beginning at 7:33:50).

For his part, Scott Lawson merely testified that he did not see Mr. Martin's blinker, but that could be due to the fact that the Plaintiffs' car was right up beside Mr. Martin's trailer at the time. (Scott Lawson Dep., p. 65, lines 15-23, and p. 66, lines 1-12, attached hereto as Exhibit 1). Furthermore, in the affidavit attached to Doc. 33 as Exhibit 1, Officer Steven McGowin simply states that **IF** Mr. Martin turned without using a turn signal, "such a maneuver would be made in violation of Alabama Code Section 32-5A-133." (Ex. 1 attached to Doc. 33, unnumbered ¶ 4).

The Plaintiffs improperly use these statements as the basis for assertions in their response brief that Mr. Martin's turn "was made without warning and without signal" (Doc. 33 at p. 8) as if this were undisputed, even in the face of substantial evidence that Mr. Martin did signal his U-turn.

## 2.    Mr. Martin's Actions Prior To The Accident Do Not Point To Wantonness.

In the Argument section of their response, the Plaintiffs assert that Mr. Martin and Swift could be found wanton because the tractor-trailer "completely

became stationary on a public highway." (Doc. 33, p. 9). To support this assertion, in their 'Statement of Facts,' they make much of the fact that, some minutes before Mr. Martin initiated the subject U-turn, trainee Jose Pagan had "stopped their vehicle along Highway 84." (Doc. 33, p. 2) (citing to Martin Dep. at pp. 47-51). In reality, Mr. Martin stated that prior to the accident, Mr. Pagan had "pulled to the side of the road." (Martin Dep., p. 48, lines 1-2, and p. 52, lines 1-11, attached hereto as Exhibit 2). They did not stop in the roadway itself, but rather pulled off on the shoulder. (Ex. 2 at p. 52, lines 1-11).

The Plaintiffs also seek support in Scott Lawson's equivocal testimony that, when he first saw the Defendants' tractor-trailer just before it turned, it appeared to Scott to have been stopped or moving very slowly:

> "Q:    He seemed to be stopped to you in the –
> A:    Yes.
> Q:    --right-hand lane?
> A:    Yes. I mean, I'm not for sure on that. But, I mean, if he was moving, he wasn't moving over one mile an hour." (Scott Lawson Dep., p. 64, lines 16-21, attached hereto as Exhibit 3).

The Defendants would argue that it would have been dangerous to attempt to make a U-turn with an 18-wheeler at anything but a very slow rate of speed! The fact that Mr. Martin was going relatively slowly compared to the Plaintiff's vehicle as he was about to turn into the median in no way speaks to wantonness on the part of Mr. Martin, but rather connotes the care he was taking in making the turn.

4

### 3.    The Plaintiffs Mischaracterize Mr. Martin's Testimony.

The Plaintiffs, in their response, try to make Mr. Martin's attempted U-turn appear wanton by making the weather at the time of the subject accident out to be worse than it actually was.  They do this by mischaracterizing certain of his deposition testimony.  Specifically, they cite to Mr. Martin's deposition at page 48 for the proposition that visibility was poor.  (Doc. 33, p. 3) ("According to Defendant Martin, the weather and light conditions were so bad, "I could see nothing.")  However, Mr. Martin's statement that 'he could see nothing' was really in reference to the fact that he saw no approaching headlights prior to beginning his U-turn:

> "And I pulled around and looked in my mirror, rearview mirror on the side, driver's side, and there was nothing coming.  And, like I said, it was misting.  The roads were wet.  It was pitch black.  **I could see nothing.  I could see no lights coming or no vehicles coming.**  So I made a left turn into the – onto the tar strip in the median."  (Ex. 2 at p. 48, lines 13-21) (emphasis added).

Mr. Martin made exceedingly clear what he meant later on in his deposition:

> "Q:    And do you have any explanation for why you didn't see the car coming?
> A:    No, sir, I have no idea why I couldn't see it.  As I said, it was pitch black.  I should have seen the lights if they were – if they weren't at an angle behind a hill or something.  I don't know.  **But there was nothing.  It was pitch black.  There was no light.  And so I had no reason to believe there was a car there.**"  (Martin Dep., p. 69, lines 15-23,

> and p. 70, lines 1-2, attached hereto as
> Exhibit 4) (emphasis added).

Mr. Martin's comment that he 'could see nothing' did not mean that visibility that night was poor, but rather that the total darkness that met his eyes in his side rear mirror gave him absolutely no suspicion of the Plaintiffs' approaching car.

**B.    The Case Upon Which The Plaintiffs Rely, Turkett v. Wedgeworth, 266 So.2d 265 (Ala. 1972), Is Wholly Distinguishable From The Case At Bar.**

The Plaintiffs, in their response brief, rely on only one case in support of their opposition to summary judgment: Turkett v. Wedgeworth, 289 Ala. 106, 266 So. 2d 265 (Ala. 1972).  Interestingly, one of the plaintiffs in the main case the Defendants rely upon in their original brief -- Cryer v. Werner Enters., 2007 U.S. Dist. LEXIS 95847 (N.D. Ala. Jan. 23, 2007) -- also relied on Turkett, leading the Northern District to point out that the pivotal testimony upon which the Turkett decision hung did not exist in Cryer.  Neither does it exist in the case at bar.

**In granting the defendants' motion for partial summary judgment, the Cryer court explained that:**

> **"[A]pplying the rule to the facts, the [Turkett] court held that the wantonness claim should have been submitted to the jury, but only after noting the existence of testimony that plaintiff's approaching vehicle "*was obvious at the time*" defendant attempted the ill-fated maneuver. (emphasis supplied by the Cryer court). This testimony is, of course, in sharp**

**contrast to the present case, where the nonmovants
actually admitted that "[the defendant driver] did not
see the plaintiffs' vehicle prior to pulling across the
highway toward the median."**  Cryer, **2007 U.S. Dist.
LEXIS 95847 at \*18.**

While the Plaintiffs here have not admitted that Mr. Martin did not see their

vehicle when he began his U-turn as did the Cryer plaintiffs did, there is certainly

no testimony that the Plaintiffs' approaching car was obvious when Mr. Martin

intiated his turn.  In fact, Mr. Martin has said repeatedly that he looked before he

turned and saw no approaching traffic whatsoever.  (See Exhibits 2 and 4 attached

hereto; and Exhibits 4-6 to Doc. 27).  Since the evidence upon which the Turkett

decision turned is nowhere to be found here, the Defendants urge this Court to

reject it as the Northern District did in Cryer.

## C.   The Two-Pronged Monroe Analysis Sets Out The Proper Inquiry On The Question Of Wantonness.

"[W]antonness is not 'any kind of negligence.'  They denote very different

concepts.  Wantonness exists only when negligence is absent." Shirley v. Shirley,

73 So. 2d 77, 84 (Ala. 1954) (citations omitted).  "In all situations . . . wantonness

"requires some degree of consciousness on the part of the defendant that injury is

likely to result from his act or omission." Tolbert v. Tolbert, 903 So. 2d 103, 114

(Ala. 2004).  "It is the conscious ***doing of an act***, with callous disregard of the

***understood risk*** of injury to others, that defines wanton conduct." Cryer v. Werner

Enters., 2007 U.S. Dist. LEXIS 95847 (N.D. Ala. Jan. 23, 2007) (citing Monroe v.

Brown, 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004)).

"'Wantonness' has been defined by the Alabama Supreme Court as the conscious doing of some act or the omission of some duty, ***while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result***." Alfa Mut. Ins. Co. v. Roush, 723 So. 2d 1250, 1256 (Ala. 1998) (citing Bozeman v. Central Bank of the South, 646 So. 2d 601 (Ala. 1994)) (emphasis added).  In other words, wantonness depends upon the defendant's state of mind.  See Monroe, 307 F.Supp.2d at 1271.

The Plaintiffs urge this honorable Court to inquire as to whether Mr. Martin knew or should have known that his actions ***could*** result in an injury to others. (Doc. 33 at p. 10) (emphasis added).  While this analysis might work for a negligence claim, it is not at all sufficient for inquiry into a claim of wantonness, which well-established Alabama case law says only exists as a matter of law if the defendant was conscious that injury ***would likely*** result.

Thus, the proper analyis here, as explained in the Defendants' Brief in Support of Their Motion for Partial Summary Judgment, is the two-pronged Monroe analysis.

### D.    The Evidence In This Case Simply Does Not Support A Claim Of Wantonness On The Part Of The Defendants.

Even assuming that the subject accident transpired according to the Plaintiffs' testimony, their claims of wantonness are not supported by the

undisputed evidence.   According to the undisputed evidence in this case, Mr.
Martin could not have acted wantonly because he did not have the requisite
knowledge so as to consciously act in a manner that would likely cause injury to
others.    Here, the undisputed evidence shows that, at worst, Mr. Martin
unknowingly or accidently turned in front of the Plaintiffs' approaching vehicle.
Such conduct would only amount to negligence – not wantonness – under Alabama
case law.

In <u>South Cent. Bell Tel. Co. v. Branum</u>, 568 So. 2d 795 (Ala. 1990), the
Alabama Supreme Court noted the key factors for determining whether a
wantonness claim is appropriate.   The court first stated that, "[n]egligence is
usually characterized as inattention, thoughtlessness, or heedlessness, a lack of due
care; whereas *wantonness is characterized as an act which cannot exist without a*
*purpose or design, a conscious or intentional act*."  <u>Branum</u>, 586 So. 2d at 797
(emphasis added).   The court went on to note that "[s]imple negligence is the
inadvertent omission of duty; and wanton or willful misconduct is characterized as
such by the state of mind with which the act or omission is done or omitted." <u>Id</u>.

Again, in <u>George v. Champion Ins. Co.</u>, 591 So. 2d 852, 853-54 (Ala. 1991),
the Alabama Supreme Court stated that inattention or carelessness does not support
a claim of wantonness.  <u>Champion</u> involved a plaintiff who sued for wantonness
when the driver with whom she rode ran a red light and collided with another

vehicle. The plaintiff-passenger, the driver, and two other passengers all engaged in conversation just prior to the collision. <u>Champion</u>, 591 So. 2d at 854. As the car approached the intersection, the driver saw that the light was green, so she glanced back in conversation. <u>Id</u>. By the time the driver turned her attention back to the road, the traffic light was red. The driver then tried to put her foot on the brake pedal, but missed and hit the clutch pedal. Consequently, the car ran the light and collided with another vehicle. <u>Id</u>.

The Supreme Court stated that those facts, when viewed in a light most favorable to the plaintiff, did not provide substantial evidence of the requisite elements of wantonness on the part of the defendant driver. <u>Champion</u>, 591 So. 2d at 854. Rather, the facts in <u>Champion</u> amounted to mere inattention, or negligence. In affirming summary judgment for the defendant, the <u>Champion</u> court held that the "facts show inadvertence on the part of the driver, *they do not amount to wantonness, which requires some degree of conscious culpability*." <u>Id</u>. (emphasis added).

Here, Mr. Martin looked for traffic, and, seeing none approaching from behind him, initiated a U-turn that he had no reason to believe would likely cause injury to others traveling in the same direction he was. At most, like the driver in <u>Champion</u>, he is guilty of inadvertence – not egregious willful or wanton conduct. Therefore, partial summary judgment is due to be entered in the Defendants' favor

on the Plaintiffs' wantonness claims.

### III.  <u>CONCLUSION</u>

A careful analysis of the evidence exposes the Plaintiffs' attempts to twist the facts of this case into something they are not so as to avoid judgment as a matter of law on their wantonness claims.  Further, a careful study of the applicable case law shows that they would persuade this Court to ask the wrong questions in determining whether the Defendants could reasonably be found liable for wantonness in the face of well-established Alabama case law which provides the proper inquiry.  Since the undisputed evidence does not support the Plaintiffs' claims of wantonness, the Defendants respectfully request that their Motion for Partial Summary Judgment be granted as if unopposed.

s/ Lea Richmond, IV
Lea Richmond, IV (ASB-8479-l74r)
**ATTORNEY FOR DEFENDANTS**

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone:   (205) 822-2006
Facsimile:   (205) 822-2057

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of March, 2008, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

R. Matt Glover, Esq.
**PRINCE GLOVER LAW**
1 Cypress Point
701 Rice Mine Road North
Tuscaloosa, Alabama 35406

Stacy Bryan Brooks, Esq.
**JONES & JONES, P.C.**
530 East Three Notch Street
Andalusia, Alabama 36520

<u>s/ Lea Richmond, IV</u>
Of Counsel

# FREEDOM COURT REPORTING



Page 1

1         IN THE UNITED STATES DISTRICT COURT

2           MIDDLE DISTRICT OF ALABAMA

3                NORTHERN DIVISION

4

5

6    SCOTT D. LAWSON and
     STEVEN LAWSON,

7

          Plaintiffs,

8

     vs.                    CASE NO. 2:07cv356-MHT

9

10   SWIFT TRANSPORTATION
     CO., INC., and

11   FREDRICK S. MARTIN, JR.,

12         Defendants.

13

14

                * * * * * * * * * * *

15

          DEPOSITION OF SCOTT DANIEL LAWSON, taken

16

     pursuant to stipulation and agreement before Sherry

17

     McCaskey, Certified Court Reporter and Commissioner

18

     for the State of Alabama at Large, in the Law

19

     Offices of Jones & Jones, 530 East Three Notch

20

     Street, Andalusia, Alabama, on Tuesday, October 23,

21

     2007, commencing at approximately 1:15 p.m.

22

                * * * * * * * * * * *

23

## FREEDOM COURT REPORTING

Page 65

1    A.   Yes, sir.

2    Q.   Did you check in your mirrors before you

3          dropped over in the left lane?

4    A.   Yes, sir.

5    Q.   And did you jerk it over in the left lane, or

6          was it just a slow, gradual -- just to ease

7          over?

8    A.   Slow, gradual move over.

9    Q.   And once you got into the left lane, how far

10        back from that tractor trailer do you think

11        you were?  Were you closer to 50 yards now or

12        closer than that?

13    A.   Fifty yards, maybe a little closer.

14    Q.   And during this entire time, was that tractor

15        trailer doing anything?  Did you see any

16        signals?

17    A.   No, sir, no signals.  The best I can remember,

18        he started moving across the highway when we

19        were right beside him, I do believe.

20    Q.   And that's my next question, is that he

21        started -- at some point, he made a left-hand

22        maneuver?

23    A.   Yes, sir.

## FREEDOM COURT REPORTING

Page 66

1   Q.   Were you still behind the trailer when he

2        started to make that maneuver?

3   A.   No, sir.

4   Q.   So you think you were -- the front end of your

5        car was at least -- was it even with the

6        tandems on the trailer.  Were you halfway up

7        the trailer?  How far up do you think you

8        were?

9   A.   Had to be at least half way -- quarter, half

10       way.  I mean --

11  Q.   You never saw the signal?

12  A.   Never saw a signal.

13  Q.   How would you describe that maneuver; did he

14       gradually come over in front of you?

15  A.   No.  He gunned it.

16  Q.   He gunned it?

17  A.   Yes, sir.

18  Q.   And how long did -- did his tractor get all

19       the way in front of you, like past you?

20  A.   The tractor was past me.  I collided with the

21       trailer.

22  Q.   With the trailer.  At what point on that

23       trailer did you hit?

# FREEDOM COURT REPORTING

1          IN THE UNITED STATES DISTRICT COURT

2       FOR THE MIDDLE DISTRICT OF ALABAMA

3                NORTHERN DIVISION

4    SCOTT D. LAWSON and        )

5    STEVEN LAWSON,             )

6          Plaintiffs,          )CV2:07cv356-MHT

7    vs.                        )

8    SWIFT TRANSPORTATION CO.,  )

9    INC., and FREDRICK S.      )

10   MARTIN, JR.,               )

11          Defendants.         )

12

13     DEPOSITION OF FREDRICK S. MARTIN, JR.

14

15          In accordance with the Federal

16   Rules of Civil Procedure, as Amended,

17   effective May 15, 1988, I, Maya Rose, am

18   hereby delivering to MATT GLOVER, the

19   original transcript of the oral testimony

20   taken on the 15th day of January, 2008.

21          Please be advised that this is

22   the same and not retained by the Court

23   Reporter, nor filed with the Court.

FREEDOM COURT REPORTING

Page 48

1    was about out of hours, so we pulled to

2    the side of the road and we switched

3    drivers, did our logbooks, and I took off.

4    And we were -- at that point, we were at

5    an area where the roads were getting

6    narrower and smaller and we were past

7    where we needed to go.  And it was really

8    pitch black out.  And I didn't want to

9    continue down that road not knowing where

10    the road went and how small it would get

11    or residential it would get.  So we

12    determined we needed to make a U-turn.

13    And I pulled around and looked in my

14    mirror, rearview mirror on the side,

15    driver's side, and there was nothing

16    coming.  And, like I said, it was misting.

17    The roads were wet.  It was pitch black.

18    I could see nothing.  I could see no

19    lights coming or no vehicles coming.  So I

20    made a left turn into the -- onto the tar

21    strip in the median.  And I stopped before

22    I went across to see if there was oncoming

23    traffic.  And at that point, I heard tires

Page 52

1        Q.    Y'all pulled off on the side of

2    the road for two reasons; one, it seems

3    like you're going in the wrong direction;

4    right?

5        A.    Yes.

6        Q.    And secondly is that Mr. Pagan

7    is getting close to being out of hours?

8        A.    Yes.

9        Q.    Who pulled the vehicle over on

10   the side of the road?

11       A.    He did.

12       Q.    And then did you take the

13   driver's seat at some point?

14       A.    Yes.

15       Q.    Was Mr. Pagan driving at the

16   time of the wreck?

17       A.    No.

18       Q.    Y'all had already switched?

19       A.    Yes.

20       Q.    How long would you say that you

21   had sat there on the side of the road?

22       A.    Just a couple minutes.  I don't

23   know exactly, but not very long.  Just

# FREEDOM COURT REPORTING

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2            MIDDLE DISTRICT OF ALABAMA

3               NORTHERN DIVISION

4

5

6    SCOTT D. LAWSON and

     STEVEN LAWSON,

7

          Plaintiffs,

8

     vs.                    CASE NO. 2:07cv356-MHT

9

10   SWIFT TRANSPORTATION

     CO., INC., and

11   FREDRICK S. MARTIN, JR.,

12        Defendants.

13

14

                * * * * * * * * * * *

15

          DEPOSITION OF SCOTT DANIEL LAWSON, taken

16

     pursuant to stipulation and agreement before Sherry

17

     McCaskey, Certified Court Reporter and Commissioner

18

     for the State of Alabama at Large, in the Law

19

     Offices of Jones & Jones, 530 East Three Notch

20

     Street, Andalusia, Alabama, on Tuesday, October 23,

21

     2007, commencing at approximately 1:15 p.m.

22

                * * * * * * * * * * *

23

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

1    Q.   Closer to a hundred, maybe a little further.

2         That's fair enough.

3    A.   Maybe.

4    Q.   What did you do as soon as you saw it?

5    A.   I signaled, got into --

6    Q.   I'm sorry.  Here's one of the things, and I

7         interrupt.  I've got another question for

8         you:  How much time passed from when you first

9         saw that tractor trailer when you signaled;

10        was it immediate or just a few seconds?

11   A.   It was -- it was immediate because I noticed

12        he wasn't moving.  And like I said, it was

13        dark, misting rain.  Couldn't tell -- kind of

14        noticed he was in the lane.  Didn't look like

15        he was moving.

16   Q.   He seemed to be stopped to you in the --

17   A.   Yes.

18   Q.   -- right-hand lane?

19   A.   Yes.  I'm mean, I'm not for sure on that.

20        But, I mean, if he was moving, he wasn't

21        moving over one mile an hour.  I mean, but,

22        you know, he seemed stopped to me.

23   Q.   And then you engaged your signal?

# FREEDOM COURT REPORTING

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE MIDDLE DISTRICT OF ALABAMA

3                    NORTHERN DIVISION

4     SCOTT D. LAWSON and          )

5     STEVEN LAWSON,               )

6               Plaintiffs,        )CV2:07cv356-MHT

7     vs.                          )

8     SWIFT TRANSPORTATION CO.,)

9     INC., and FREDRICK S.        )

10    MARTIN, JR.,                 )

11              Defendants.        )

12

13       DEPOSITION OF FREDRICK S. MARTIN, JR.

14

15               In accordance with the Federal

16    Rules of Civil Procedure, as Amended,

17    effective May 15, 1988, I, Maya Rose, am

18    hereby delivering to MATT GLOVER, the

19    original transcript of the oral testimony

20    taken on the 15th day of January, 2008.

21               Please be advised that this is

22    the same and not retained by the Court

23    Reporter, nor filed with the Court.

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

## FREEDOM COURT REPORTING

Page 69

1    Q.    No, I don't know if I said -- I

2  sure didn't mean to say passenger seat if

3  I did.

4    A.    I thought that's what you said,

5  but I'm not sure either.

6    Q.    When you were over on the side

7  of the road and you made the conscious

8  decision to make a U-turn from the right

9  lane and cross over another lane into the

10  median, did you look in your rearview

11  mirror to see if a car was coming?

12    A.    Yes.

13    MR. GODWIN:  Object to the form

14  of the question.

15    Q.    And do you have any explanation

16  for why you didn't see the car coming?

17    A.    No, sir, I have no idea why I

18  couldn't see it.  As I said, it was pitch

19  black.  I should have seen the lights if

20  they were -- if they weren't at an angle

21  behind a hill or something.  I don't know.

22  But there was nothing.  It was pitch

23  black.  There was no light.  And so I had

## FREEDOM COURT REPORTING

Page 70

1    no reason to believe there was a car

2    there.

3        Q.    Did you have an opportunity to

4    speak to either of the Lawson boys that

5    night?

6        A.    Well, yes, I did.  I spoke to

7    the passenger, the brother, who was

8    rational.  The -- Scott, the driver, was

9    crying like a five-year-old girl and just

10   screaming, what am I going to do?  What am

11   I going to do?  My car.  And his brother

12   was, like, calm down.  It's just an

13   accident.  It will be okay.  And he just

14   was -- he was ranting and raving and

15   crying and just carrying on.  I -- there

16   was no talking to him.  The police

17   officers tried to speak with him and

18   couldn't for a while.

19            MR. GODWIN:  You've answered

20   the question.

21       Q.    When you got out of your

22   vehicle and saw the damage that was done

23   to the Lawson vehicle, did it ever cross